UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────┐
│ USDC SDNY                    │
│ DOCUMENT                     │
│ ELECTRONICALLY FILED         │
│ DOC #:                       │
│ DATE FILED:  9/8/16          │
└─────────────────────────────┘
```

TIMOTEO XOCHIMITL,

                    Plaintiff,

                 -against-

PITA GRILL OF HELL'S KITCHEN, INC, *et al.*,

                 Defendants.

**REPORT AND RECOMMENDATION**

14-CV-10234 (JGK) (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

**To the Honorable John G. Koeltl, United States District Judge:**

On April 28, 2016, the Court entered a default judgment in this action for unpaid wages, including the proper minimum wage and overtime compensation, under the Fair Labor Standards Act and New York State Labor Law in favor of Plaintiff Timoteo Xochimitl and against Defendants Bennett Orfaly, Juan Manuel Perez, and East Meets West, LLC. (Dkt. No. 46). This matter was then referred to me to conduct an inquest into damages on the same date. (Dkt. No. 45). For the reasons that follow, I recommend that Xochimitl be awarded damages against the Defaulting Defendants in the amount of $67,676.27 in unpaid minimum wage and overtime compensation and spread of hours pay; $5,000 in statutory damages for state law wage statement and wage notice violations; $53,784.43 in liquidated damages; prejudgment and post-judgment interest as set out below; $4,988.25 in attorneys' fees; and $625 in costs.

1

## I.   BACKGROUND

Xochimitl commenced this wage-and-hour action on December 31, 2014.

Complaint, filed December 31, 2014 ("Compl."), Dkt. No. 1.  Defendants Ofer Biton,

Bennett Orfaly, Christopher Pennachio, Robert Pennachio, Juan Manuel Perez, and

Wayne Muratone, along with Defendants Pita Grill of Hell's Kitchen Inc.,

PitaGrillNYC Corp., Obam Management Inc., East Meets West LLC, and John Doe

Corp., owned and operated four restaurants under the trade name "Pita Grill" in

the New York City metropolitan area.  Compl. ¶ 1.  The restaurants that are the

subject of this lawsuit are located at 790 Ninth Avenue, New York, NY ("Pita Grill

Ninth Avenue"), 1083 Second Avenue, New York, NY ("Pita Grill 57 Street"), 441

Third Avenue, New York, NY ("Pita Grill Third Avenue"), and 1028 Amsterdam

Avenue, New York, NY ("Pita Grill Amsterdam Avenue") (collectively, "Pita Grill

Restaurants").  Id.

In his complaint, Xochimitl alleges that Bennett Orfaly, Juan Manuel Perez,

and East Meets West, LLC (collectively, the "Defaulting Defendants"), along with

all other named Defendants, owned and operated the Pita Grill Restaurants as a

joint enterprise.  Id.; Plaintiff's Proposed Findings of Fact and Conclusions of Law

("Pl.'s Findings and Conclusions") ¶ 5, Dkt. No. 54.  Xochimitl further alleges that,

while he was jointly employed by Defendants as a cook and delivery worker from

approximately May 2008 until September 6, 2014, he was denied minimum wages,

overtime compensation, spread of hours pay, and adequate notice of his wages in

2

violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").  Compl. ¶¶ 14, 46, 84-126; Pl.'s Findings and Conclusions ¶¶ 6-7.

Xochimitl accordingly seeks damages of unpaid minimum wage and overtime compensation in the amount of $96,692.90 against Orfaly and Perez and $2,691 against East Meets West LLC; damages of unpaid spread of hours pay in the amount of $7,250.45 against Orfaly and Perez; statutory damages for violations of the NYLL wage notice requirement in the amount of $3,550 against Orfaly and Perez and $2,500 against East Meets West LLC; and statutory damages for violations of the NYLL wage statement requirement of $7,100 against Orfaly and Perez and $2,500 against East Meets West LLC.  Pl.'s Findings and Conclusions ¶¶ 37, 39, 49, 51.

Xochimitl also claims entitlement to liquidated damages under both the FLSA and NYLL, specifically requesting liquidated damages pursuant to the FLSA for minimum wage and overtime violations in the amount of $41,559.76 against Orfaly and Perez and $2,961 against East Meets West LLC; liquidated damages pursuant to NYLL for minimum wage and overtime violations in the amount of $88,940.24 against Orfaly and Perez and $2,944.50 against East Meets West LLC; and liquidated damages pursuant to NYLL for spread of hours violations of $5,406.05 against Orfaly and Perez.  Pl.'s Findings and Conclusions ¶ 47.[1]

---

[1] Xochimitl does not explain why he is seeking damages from East Meets West LLC separately.

In addition, Xochimitl requests an award of prejudgment interest on unpaid minimum wage, overtime, and spread of hours damages that are awarded to him for any time period for which the Court does not award him liquidated damages under the FLSA. Pl.'s Findings and Conclusions ¶ 53. Finally, Xochimitl seeks recovery of attorneys' fees of $18,902.50 and costs in the amount of $700. Pl.'s Findings and Conclusions ¶ 61.

## A.   Procedural History

Xochimitl submitted affidavits certifying that he served a complaint and summonses on all Defendants in or about January 2015. *See* Affidavits of Service, Dkt. Nos. 19-22. On March 26, 2015, Defendants Christopher Pennachio, Robert Pennachio, and Pita Grill of Hell's Kitchen, Inc. filed an answer. (Dkt. No. 8). Defendants Ofer Biton, Obam Management, Inc., and PitaGrillNYC Corp. filed an answer on May 21, 2015. (Dkt. No. 16).

Xochimitl thereafter reached a settlement in principle with Defendants Christopher Pennachio, Robert Pennachio, and Pita Grill of Hell's Kitchen Inc. at a settlement conference before me on August 31, 2015. (Dkt. Nos. 31-32). On January 29, 2016, Xochimitl informed the Court that he also had come to a settlement agreement with Defendants Ofer Biton, Obam Management, Inc., and PitaGrillNYC Corp. (Dkt. No. 35). Plaintiff, writing jointly with Christopher Pennachio, Robert Pennachio, Ofer Biton, Pita Grill of Hell's Kitchen, Inc., Obam Management Inc., and PitaGrillNYC Corp., submitted a settlement agreement for the Court's approval on April 6, 2016. (Dkt. No. 37).

4

On April 8, 2016, Xochimitl filed a letter with the Court to request that a previously scheduled pre-trial conference be adjourned *sine die* because he had reached a settlement agreement with all the Defendants who had appeared in the action. (Dkt. No. 38). The Court granted this request and ordered Xochimitl to file default papers, via an order to show cause, on the Defendants who had failed to appear by April 15, 2016. (Dkt. No. 39).

The Court signed an order to show cause on April 18, 2016 directing Defendants East Meets West LLC, Orfaly, and Perez to show cause by April 27, 2016 as to why a default judgment should not be entered against them and providing that any opposition to the order must be filed by April 25, 2016. (Dkt. No. 43).[2] This order was served on the Defaulting Defendants on April 19, 2016. (Dkt. No. 44). On April 26, 2016, the Court granted a default judgment against the Defaulting Defendants, none of whom had answered or otherwise appeared. (Dkt. No. 46).

On April 28, 2016, this case was referred to me for an inquest as to Xochimitl's damages. (Dkt. No. 45).[3] Plaintiff submitted proposed findings of fact and conclusions of law concerning damages sought from the Defaulting Defendants as well as declarations from the Plaintiff himself and from counsel in support of his

---

[2] Plaintiff did not pursue a default judgment against Defendants John Doe Corp., and Wayne Muratone and, at plaintiff's request, the Court dismissed these defendants from the action without prejudice on April 26, 2016. (Dkt. No. 47).

[3] The Court approved the settlement agreement with the non-defaulting Defendants on this date as well. (Dkt. No. 48).

application on June 3, 2016.  Pl.'s Findings and Conclusions; Declaration of Timoteo

Xochimitl ("Xochimitl Decl."), June 3, 2016, Dkt. No. 53; Declaration of Joshua S.

Androphy ("Androphy Decl."), June 3, 2016, Dkt. No. 52.  To date, the Defaulting

Defendants have not responded.

### B.     Facts Established as a Result of Defendants' Default

It is well settled that, in light of Defendants' default, the Court is required to

accept all of Plaintiff's allegations as true, except for those pertaining to damages.

*See, e.g., Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain*

*Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)).  Xochimitl "bears the burden of

establishing [his] entitlement to recovery and thus must substantiate [his] claim

with evidence to prove the extent of [his] damages." *Dunn v. Advanced Credit*

*Recovery Inc.*, No. 11-CV-4023 (PAE) (JLC), 2012 WL 676350, at *2 (S.D.N.Y. Mar.

1, 2012) (citing *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158

(2d Cir. 1992)), *adopted by*, 2012 WL 1114335 (S.D.N.Y. Apr. 3, 2012).  Xochimitl is

entitled to all reasonable inferences that can be made from the evidence that is

presented in support of his damages claims.  *See, e.g., Au Bon Pain Corp.*, 653 F.2d

at 65.  As such, the following facts, which the Court has drawn from Xochimitl's

complaint and inquest submissions, are deemed established for the purpose of

determining the damages to which Xochimitl is entitled.  *See, e.g., Taizhou*

*Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 Fed. App'x 54, 56 (2d Cir. 2013).

The Defaulting Defendants owned and operated the Pita Grill Restaurants as

a joint enterprise under the trade name "Pita Grill."  Compl. ¶ 1; Pl.'s Findings and

Conclusions ¶¶ 6-7.  The Defaulting Defendants jointly employed Xochimitl as a cook and delivery worker at the Pita Grill Restaurants from approximately May 2008 until September 6, 2014.  Compl. ¶¶ 45-46; Pl.'s Findings and Conclusions ¶ 6; Xochimitl ¶ 5.  Xochimitl worked at Pita Grill Ninth Avenue as a cook and delivery worker from about May 2008 until about January 2014, as a delivery worker at Pita Grill Third Avenue from about May 2013 until about March 2014, as a cook at Pita Grill Amsterdam Avenue in April 2014, and as a cook at Pita Grill 57 Street from approximately May 2014 until September 6, 2014. Compl. ¶ 46.

### 1.    Xochimitl's Work Schedules and Rates of Compensation

The Defaulting Defendants paid Xochimitl a fixed weekly salary for each week he worked as a cook and an hourly rate of pay for all hours he worked as a delivery worker.  Pl.'s Findings and Conclusions ¶¶ 16-24, 32; Xochimitl Decl. ¶¶ 26-27. The Defaulting Defendants paid Xochimitl by both check and cash. Compl. ¶ 58; Pl.'s Findings and Conclusions ¶ 15; Xochimitl Decl. ¶ 16.

The hourly rate that the Defaulting Defendants paid Xochimitl for his work as a delivery worker fell below the minimum hourly wage at all relevant times.  Pl.'s Findings and Conclusions ¶¶ 7, 32.  The Defaulting Defendants compensated Xochimitl as a tipped employee for his delivery work, paying him a rate below the minimum wage in order to reflect a credit for tips he received on top of his wages. Compl. ¶¶ 78-79.  However, the Defaulting Defendants never informed Xochimitl that a tip deduction or tip credit would be taken against his earned wages.  Compl. ¶ 76; Pl.'s Findings and Conclusions ¶¶ 26, 28; Xochimitl Decl. ¶ 33.

Xochimitl regularly worked more than 40 hours per week and more than ten hours per day at the Pita Grill Restaurants. Compl. ¶¶ 5, 51-52, 54, 56-57; Pl.'s Findings and Conclusions ¶¶ 8-9, 11, 13-14; Xochimitl Decl. ¶¶ 9-14, 28-30. Yet at no point did the Defaulting Defendants compensate Xochimitl with overtime pay. *Id.* Nor did the Defaulting Defendants pay Xochimitl an additional hour of compensation as "spread of hours" pay for workdays that lasted longer than ten hours. Compl. ¶ 7; Pl.'s Findings and Conclusions ¶ 25; Xochimitl Decl. ¶ 31.

Xochimitl's work schedule and rate of pay varied throughout his employment at the various Pita Grill Restaurants as follows:

From approximately November 2008 until November 2012, Xochimitl worked as a cook and a delivery worker at Pita Grill Ninth Avenue for roughly 65 hours a week. Compl. ¶ 51; Xochimitl Decl. ¶ 9. As a cook, he worked on Mondays through Thursdays from 10:00 a.m. through 4:00 p.m. and on Fridays and Sundays from 10:00 a.m. through 11:00 p.m. Compl. ¶ 51; Xochimitl Decl. ¶ 9. As a delivery worker, Xochimitl worked on Mondays, Tuesdays, and Wednesdays from 5:00 p.m. to 10:00 p.m. for a total of 15 hours per week. Compl. ¶ 51; Xochimitl Decl. ¶ 9. Xochimitl was paid a flat weekly rate for his work as a cook that amounted to $475 from November 2008 until about October 2010, $512.50 from October 2010 until about May 2011, and $537.50 from May 2011 until about November 2012. Compl. ¶¶ 59-61; Xochimitl Decl. ¶¶ 17-19. Xochimitl received $5.00 per hour (or $75 per week) for his delivery duties from November 2008 until about November 2012. Compl. ¶¶ 59-61; Xochimitl Decl. ¶¶ 17-19.

From approximately November 2012 to May 2013, Xochimitl worked as a cook at Pita Grill Ninth Avenue on Mondays, Tuesdays, Wednesdays, and Thursdays from 10:00 a.m. to 4:00 p.m. and on Fridays and Sundays from 10:00 a.m. to 11:00 p.m.  Compl. ¶¶ 52-53; Xochimitil Decl. ¶¶ 10-14.  Xochimitl typically worked 50 hours per week and was paid a flat weekly rate that amounted to $537.50 from November 2012 until about March 2013 and $397.75 from March 13 until about May 2013.  Compl. ¶¶ 62-63; Xochimitl Decl. ¶¶ 20-21.

From approximately May 2013 to January 2014, Xochimitl worked as a cook at Pita Grill Ninth Avenue on Mondays, Tuesdays, Wednesdays, and Thursdays from 10:00 a.m. to 4:00 p.m. and on Fridays from 10:00 a.m. to 11:00 p.m.  Compl. ¶ 54; Xochimitl Decl. ¶ 12.  During that time, Xochimitl also worked as a delivery worker at Pita Grill Third Avenue on Mondays, Wednesdays, and Thursdays from approximately 5:00 p.m. to 12:00 a.m. and on Tuesdays from 5:00 p.m. to 10:00 p.m.  Compl. ¶ 54; Xochimitl ¶ 12.  Xochimitl worked approximately 63 hours per week and was paid a flat weekly rate of $397.75 for his work as a cook and $5.00 per hour (or $130 per week) for his delivery duties.  Compl. ¶¶ 54, 64, Xochimitl Decl. ¶¶ 12, 22.

From approximately January 2014 to March 2014, Xochimitl worked at Pita Grill Third Avenue as a delivery worker on Mondays, Wednesdays, and Thursdays from 5:00 p.m. to 12:00 a.m. and on Tuesdays from 5:00 p.m. to 10:00 p.m.  Compl. ¶ 55; Xochimitl Decl. ¶ 13. He worked a total of 26 hours at the rate of $5.00 per hour (or $130 per week).  Compl. ¶¶ 55, 65; Xochimitl Decl. ¶¶ 13, 23.

In April 2014, Xochimitl worked at Pita Grill Amsterdam for approximately three weeks.  Compl. 56; Xochimitl Decl. ¶ 14.  Xochimitl worked as a cook for about 60 hours a week for a flat weekly rate of $700.  Compl. ¶ 66; Xochimitl Decl. ¶ 24.

From approximately May 2014 until September 6, 2014, Xochimitl worked at Pita Grill 57 Street as a cook on Mondays, Wednesdays, and Thursdays from 10:00 a.m. to 8:00 p.m., on Tuesdays from 11:00 a.m. to 9:00 p.m., on Fridays from 11:00 a.m. to 12:00 a.m., and on Saturdays from 10:00 a.m. to 5:00 p.m.  Comp. ¶¶ 18, 57; Xochimitl Decl. ¶ 15.  Xochimitl worked approximately 60 hours per week at a flat weekly rate of $700 per week.  Compl. ¶ 67; Xochimitl Decl. ¶ 25.

### 2.  Defaulting Defendants' Failure to Provide Wage Statements and Notice and to Maintain Accurate Records

Throughout his employment, the Defaulting Defendants failed to provide Xochimitl with a statement of wages for each pay period or an annual notice of his terms of employment.  Compl. ¶¶ 72-73; Pl.'s Findings and Conclusions ¶¶ 26. 58; Xochimitl Decl. ¶¶ 33, 35.  The Defaulting Defendants also neglected to track the hours that Xochimitl worked or the amount he was paid.  Compl. ¶ 84; Xochimitl ¶ 32.  They carried out these practices willfully to avoid paying Xochimitl the entirety of his wages.  Compl. ¶ 89.

## II.  DISCUSSION

### A.  Burden of Proof on Damages

"Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true. The district court must instead conduct an inquiry in order to

ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).  Plaintiffs "bear[] the burden of establishing [their] entitlement to recovery and thus must substantiate [their] claim with evidence to prove the extent of [their] damages." *Dunn*, 2012 WL 676350, at *2 (citing *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158).  To establish damages upon default, plaintiffs must demonstrate that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup*, 973 F.2d at 159; *Laboratorios Rivas, SRL v. Ugly & Beauty, Inc.*, No. 11-CV-5980 (RA) (JLC), 2013 WL 5977440, at *5 (S.D.N.Y. Nov. 12, 2013), *adopted by*, 2014 WL 112397 (S.D.N.Y. Jan. 8, 2014).

"In determining damages not susceptible to simple mathematical calculation, Federal Rule of Civil Procedure 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence." *Laboratorios Rivas, SRL*, 2013 WL 5977440, at *5 (citations omitted).  The Second Circuit has long approved the holding of an inquest by affidavit, without an in-person court hearing, "as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment." *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997) (quoting *Fustok v. ContiCommoditv Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)).  "[Courts] have interpreted this to mean that, even when the defendant defaults and is not present to object, damages must be based on admissible evidence." *House v. Kent Worldwide Mach. Works. Inc.*, 359 F. App'x 206, 207 (2d

Cir. 2010) (citations omitted).  In this case, "a hearing is not necessary, as documents submitted in this action provide a 'sufficient basis from which to evaluate the fairness' of the damages requested." *Am. Jewish Comm. v. Berman*, No. 15-CV-5983 (LAK) (JLC), 2016 WL 3365313, at *4 (quoting *Fustok*, 873 F.2d at 40), *adopted by*, 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016).

An employee seeking to recover unpaid wages "has the burden of proving that he performed work for which he was not properly compensated." *Jiao v. Chen*, No. 03-CV-165 (DF), 2007 WL 4944767, at *2 (S.D.N.Y. Mar. 30, 2007) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 689 (1946)).  An employer is required to maintain "records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him."  29 U.S.C. § 211(c); *see also* 12 N.Y. Comp. Codes R & Regs. ("NYCRR") § 142-2.6(a) ("[e]very employer shall establish, maintain and preserve for not less than six years, weekly payroll records").  In the case of a default judgment, the "defaulting defendant deprive[s] the plaintiff of the necessary employee records required by the FLSA, thus hampering [the] plaintiff's ability to prove his damages" and consequently "a plaintiff may meet his burden of proof by relying on recollection alone to establish that he performed work for which he was improperly compensated." *Kernes v. Glob. Structures, LLC*, No. 15-CV-659 (CM) (DF), 2016 WL 880199, at *6 (S.D.N.Y. Mar. 1, 2016) (internal citations and quotation marks omitted) (alteration in original); *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-

8195 (LLS) (JLC), 2012 WL 1669341, at *3 (S.D.N.Y. May 14, 2012), *adopted by*,

Order, dated Aug. 9, 2012 (Dkt. No. 20).

"[T]he employee should not speculate . . . but may rely on his present memory

and recollection to carry the burden." *Id.* at *3 (internal citations and quotation

marks omitted). An affidavit that sets forth the number of hours worked and pay

received is sufficient for this purpose. *Id.*; *Angamarca v. Pita Grill 7 Inc.*, No. 11-

CV-7777 (JGK) (JLC), 2012 WL 3578781, at *3 (S.D.N.Y. Aug. 2, 2012), *adopted by*,

Order, dated Dec. 14, 2012 (Dkt. No. 39). Absent "rebuttal by defendants . . . [the

employee's] recollection and estimates of hours worked are presumed to be correct."

*Kernes*, 2016 WL 880199, at *6 (internal citations and quotation marks omitted)

(alteration in original).

### B.   Statute of Limitations

Xochimitl began working for the Defaulting Defendants in May 2008 and he

filed his complaint on December 31, 2014. Compl. ¶18; Pl.'s Findings and

Conclusions ¶ 6; Xochimitl Decl. ¶ 5. Xochimitl filed claims pursuant to both the

FLSA and NYLL. The statute of limitations is six years under NYLL, two years

under the FLSA for standard violations, and three years under the FLSA if an

employer's acts are found to be willful. *See* NYLL § 663(3); 29 U.S.C. § 255(a).

Xochimitl alleged that the Defaulting Defendants acted willfully by declining to pay

him for his full hours worked, overtime pay, and spread of hours pay. Compl. ¶ 87.

The Court accepts this allegation as true, given Orfaly, Perez, and East Meets West

LLC's default. *Herrara v. 12 Water St. Gourmet Cafe, Ltd.*, No. 13-CV-4370 (JMF)

(RLE), 2016 WL 1274944, at *4 (S.D.N.Y. Feb. 29, 2016) (collecting cases), *adopted by,* 2016 WL 1268266 (S.D.N.Y. Mar. 31, 2016).  Xochimitl's covered employment period is thus limited to any date after and including December 31, 2008 under the NYLL six-year statute of limitations, and to any date after and including December 31, 2011 under the FLSA three-year statute of limitations.

While "plaintiffs may not recover under both the FLSA and the NYLL for the same injury, courts allow plaintiffs to recover under the statute that provides for the greatest relief." *Ni v. Bat-Yam Food Servs. Inc.*, No. 13-CV-7274 (ALC) (JCF), 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016); *see, e.g., Castillo v. RV Transp., Inc.*, No. 15-CV-0527 (LGS), 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016); *Maldonado*, 2012 WL 1669341, at *5.  Because NYLL allows for greater or equal recovery than the FLSA at all relevant times during Xochimitl's tenure, the Court will apply NYLL for all damages calculations, unless otherwise noted.

### C.    Minimum Wage, Overtime, and Spread of Hours Compensation

Xochimitl alleges that the Defaulting Defendants failed to comply with federal and state minimum wage and overtime requirements as well as state-mandated spread of hours compensation.  Compl. ¶¶ 94-120.  Xochimitl asserts that, throughout his employment as a delivery worker, he earned less than the applicable minimum wage.  Pl.'s Findings and Conclusions ¶ 7.  Xochimitl states that he also was not compensated at the overtime rate for hours he worked in excess of 40 per week and did not receive spread of hours pay for days that he worked in excess of ten hours.  Xochimitl Decl. ¶¶ 28, 31.  Xochimitl thus alleges

that he should be awarded damages against Orfaly and Perez in the amount of $96,691.90 for minimum and overtime wages and spread of hours pay, and against East Meets West LLC in the amount of $2,691 for minimum and overtime wages. Pl.'s Findings and Conclusions ¶¶ 66-67.[4]

### 1.    Legal Standards Governing Required Minimum Wage, Overtime, and Spread of Hours Compensation

Federal and state law require that employers pay employees a statutory minimum wage for the first 40 hours that employees work each week.  *See* 29 U.S.C. § 206(a)(1); 12 NYCRR § 146-1.2.  When Xochimitl began working in May 2008, the New York State minimum wage was $7.15 per hour.  NYLL § 652.  The minimum wage was increased to $7.25 per hour after July 24, 2009 and to $8.00 per hour after December 31, 2013.  NYLL § 652(1); 12 NYCRR § 146-1.2; *see, e.g., Wicaksono v. XYZ 48 Corp.*, No. 10-CV-3635 (LAK) (JCF), 2011 WL 2022644, at *3 (S.D.N.Y. May 2, 2011), *adopted by*, 2011 WL 2038973 (S.D.N.Y. May 24, 2011).  Additionally, under federal and state law, employers may compensate "tipped employees" at a lower hourly rate, which is calculated by crediting a portion the tips received against the required hourly minimum wage, if the employer meets certain requirements in informing its employees about this tip credit.  29 U.S.C. § 203(m); 12 N.Y.C.R.R. § 146-1.3(b) (applied to food service workers); *see, e.g., Andrade v. 168 First Ave Rest. Ltd.*, No. 14-CV-8268 (JPO) (AJP), 2016 WL 3141567, at *4 (S.D.N.Y. June 3, 2016), *adopted by,* 2016 WL 3948101 (S.D.N.Y. July 19, 2016).

---

[4] Xochimitl's counsel has provided a spreadsheet detailing the amount of money that is claimed against the Defaulting Defendants.  Androphy Decl., ¶ 4, Ex. 2.

"To determine whether and to what extent an employee is owed backpay for unpaid minimum wages, the Court first must ascertain the employee's regular hourly rate." *Rosendo v. Everbrighten Inc.*, No. 13-CV-7256 (JGK) (FM), 2015 WL 1600057, at *3 (S.D.N.Y. April 7, 2015). When this hourly rate "is less than the statutory minimum wage for the given period," the Court determines the "amount of minimum wages owed per hour . . . by subtracting the regular rate from . . . the statutory minimum wage." *Baltierra v. Advantage Pest Control Co.*, No. 14-CV-5917 (AJP), 2015 WL 5474093, at *5 (S.D.N.Y. Sept. 18, 2015). Under the FLSA, if an employee receives a flat weekly salary, "'[t]here is a rebuttable presumption that [the] weekly salary covers 40 hours.'" *Rosendo*, 2015 WL 1600057, at *3 (quoting *Moon v. Kwon*, 248 F. Supp. 2d 201, 207 (S.D.N.Y. 2002); *Herrara*, 2016 WL 1274944, at *5. The Court will then "calculate[] the employee's regular hourly rate by dividing his weekly salary by forty hours." *Rosendo,* 2015 WL 1600057, at *3. New York law also provides that, effective as of January 1, 2011, where an employer fails to pay a restaurant employee an hourly rate of pay, "the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." 12 N.Y.C.R.R. § 146-3.5.

Federal and state law also require that employers pay employees one and one-half times the ordinary minimum wage rate for any time that exceeds 40 hours in a given week. 29 U.S.C. § 207(a); 12 NYCRR § 146–1.4; *Kernes*, 2016 WL 880199, at *3 ("[A]n employee is entitled to be paid for overtime hours (*i.e.,* hours exceeding

16

40 per week), at a 'rate not less than one and one-half times the regular rate at which [the employee] is employed.'"); *Herrara*, 2016 WL 1274944, at *5. Appropriate overtime wages are "calculated by multiplying [an employee's] regular hourly rate (or the minimum wage rate, if his regular hourly rate falls below the minimum wage) by one and one-half. That rate is then multiplied by the number of hours in excess of forty hours the employee worked each week." *Rosendo,* 2015 WL 1600057, at *4. "An employer is not exempt from paying overtime wages merely because it pays the employee a weekly salary." *Amaya v. Superior Tile and Granite Corp.*, No. 10-CV-4545 (PGG), 2012 WL 130425, at *9 (S.D.N.Y. Jan 17, 2012). "'Unless the contracting parties intend and understand the weekly salary to include overtime hours at the premium rate,' courts understand the weekly salary to cover only the first 40 hours." *Herrara*, 2016 WL 1274944, at *5 (citing *Giles v. City of New York,* 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999)).

Finally, under NYLL, an employee is entitled to "receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required by [New York's minimum wage law], for any day in which . . . the spread of hours exceeds 10 hours." 12 N.Y.C.R.R. § 142-2.4. Spread of hours is defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty." 12 N.Y.C.R.R. § 146-1.6. "Through the end of 2010, this requirement only applied to employees paid at the New York minimum wage and did not ensure additional compensation to employees whose wages sufficiently exceed that floor." *Yuquilema v. Manhattan's*

*Hero Corp.*, No. 13-CV-461 (WHP) (JLC), 2014 WL 4207106, at *4 (S.D.N.Y. Aug.

20, 2014) (internal citation and quotation marks omitted), *adopted by,* 2014 WL

5039428 (S.D.N.Y. Sept. 30, 2014).  Effective January 1, 2011, however, "the NYLL

was amended such that the spread of hours regulations 'apply to all employees in

restaurants . . . regardless of a given employee's regular rate of pay.'"  *Andrade*,

2016 WL 3141567, at *5–6 (quoting 12 N.Y.C.R.R. § 146-1.6(d)).

### 2.    Application

Xochimitl's work schedule and salary varied considerably over the more than

six years that he worked for the Defaulting Defendants as both a cook and delivery

worker at the Pita Grill Restaurants.  Xochimitl was paid separately for his work as

a cook and as a delivery worker, generally receiving a fixed weekly salary as a cook

and an hourly wage as a delivery worker.  In light of the rebuttable presumption

that a fixed weekly salary is intended to compensate an employee for 40 hours of

work, the Court will calculate damages based on the understanding that, where

Xochimitl received both a fixed salary and an hourly salary in a given week, all

hours worked at the hourly salary are overtime hours.

Additionally, although Xochimitl does not explicitly state that he received

tips for performing his duties as a delivery worker, he asserts that Defendants

never informed him that they had reduced his hourly wages by a tip allowance or

any other deduction or credit.  Compl. ¶¶ 47, 76; Xochimitl Decl. ¶ 33.  Given the

default judgment, the Court accepts this assertion as true and also notes that the

Defaulting Defendants cannot take advantage of any "tip credit because they have

18

not satisfied their burden in proving that they informed the employees of the tip credit law, a requirement that is 'strictly construed.'" *Maldonado*, 2012 WL 1669341, at *5 (citing *Wicaksono*, 2011 WL 2022644, at *4).

As explained below, the Court finds that Xochimitl is entitled to recover unpaid minimum wage and overtime compensation as well as spread of hours pay in the amount of $67,676.27 for his work from December 31, 2008 until on or about September 6, 2014. The Court's calculations of the minimum wage, overtime, and spread of hours pay that are owed to Xochimitl follow and are summarized in three tables that are included as appendices to this Report and Recommendation.

### a.    December 31, 2008 to October 2010

From December 31, 2008 to October 15, 2010 (approximately 93 weeks),[5] Xochimitl worked approximately 65 hours per week: 50 hours per week as a cook and 15 hours per week as a delivery worker. Compl. ¶ 51; Xochimitl Decl. ¶ 9.

Xochimitl alleges that he is entitled to overtime compensation for his work as a cook during this time period. *See* Androphy Decl., Ex. B. To calculate Xochimitl's hourly rate for this period the Court divides his fixed weekly wages of $475 by the 50 hours he worked, which amounts to an hourly rate of $9.50. Because Xochimitl worked more than 40 hours as a cook, he is entitled to overtime pay at a rate of

---

[5] Other than his final date of employment with Defaulting Defendants (September 6, 2014) and the three weeks he worked in April 2014, Xochimitl does not specify end-dates for the many periods of employment in which he had varying schedules and rates of pay. The Court accordingly adopts a midway point of the month (e.g., on or about January 15) to estimate when Xochimitl's schedule or rate of pay changed for each month where he alleges this was the case.

$14.75 an hour, which the Court calculated by multiplying the $9.50 hourly rate

that Xochimitl received by 1.5. As he was already paid at a rate of $9.50 for all of

the hours that he worked as a cook, Xochimitl is owed an additional $4.75 for each

of the ten hours that he worked beyond a 40-hour workweek. This amounts to

$47.50 per week and $4,417.50 for this 93-week period.

Xochimitl contends that he is also owed compensation for the 15 hours per

week that he worked as a delivery worker. The Court finds that Xochimitl's

overtime rate for this work should be determined by using the prevailing minimum

wage, because the $5.00 per hour that he was paid as a delivery worker falls well

below that amount.[6] Accordingly, for the period of December 31, 2008 to July 23,

2009, the Court multiplies the $7.15 minimum hourly rate by 1.5 and applies an

overtime rate of $10.73. Compl. ¶ 59; Xochimitl Decl. ¶ 17. As he was already paid

$5.00 per hour for his delivery work, he is entitled to an additional $5.73 in

overtime pay per hour, which amounts to $85.95 per week and $2,492.55 for that

29-week period. After July 24, 2009, the minimum wage was increased to $7.25 per

hour, increasing Xochimitl's overtime rate to $10.88 per hour. He should thus be

---

[6] While Xochimitl's damages worksheet does not appear to calculate the
compensation owed to him for his delivery duties at an overtime rate, Xochimitl's
findings and conclusions state that damages were calculated "based on the
assumption that all hours as a delivery worker are overtime hours." Pl.'s Findings
and Conclusions ¶ 36. Given this stated intent and Xochimitl's representations that
he worked 50 hours a week as a cook in addition to his 15 hours as a delivery
worker, the Court finds that overtime compensation is appropriate for any hours in
which Xochimitl performed delivery work in weeks where he already worked at
least 40 hours.

awarded an additional $5.88 in overtime pay per hour, amounting to $88.20 per week and $5,644.80 for that 64-week period.

Finally, while Xochimitl worked more than ten-hour shifts on several days during this time period, he is not entitled to spread of hours pay because, until January 2011, this requirement only applied to employees paid at or below the minimum wage. *See* Compl. ¶ 51; Xochimitl Decl. ¶ 9; 12 N.Y.C.R.R. § 146-2.4.

The Court finds that Xochimitl is thus entitled to recover unpaid overtime compensation of $12,554.85 for his work from December 31, 2008 until in or about October 15, 2010.

### b.    October 2010 to May 2011

From October 16, 2010 until about May 14, 2011 (approximately 30 weeks), Xochimitl continued to work as a cook and delivery worker at Pita Grill Ninth Avenue approximately 65 hours per week, on the same schedule. Compl. ¶ 51; Xochimitl Decl. ¶ 9.

Xochimitl alleges that he is entitled to overtime wages for his work as a cook during this time period as well. *See* Androphy Decl., Ex. 2. To calculate Xochimitl's hourly rate for the period from October 2010 until December 31, 2010, the Court divides Xochimitl's fixed weekly wages of $512.50 by the 50 hours that he worked, which amounts to an hourly rate of $10.25. The Court thereby determines that Xochimitl's hourly overtime rate is $15.38 for this time period ($10.25 x 1.5). Because Xochimitl was already compensated for the 50 hours that he worked at the $10.25 rate, the Court finds that he is only entitled to an additional $5.13 for each

21

of the ten hours of overtime that he worked from October 16, 2010 until December 31, 2010, amounting to $51.30 per week and $564.30 for this 11-week period.

As of January 1, 2011, state law provided that a restaurant employee's hourly rate of pay shall be calculated by dividing weekly earnings by the lesser of 40 hours or the actual number of hours worked in a work week. 12 N.Y.C.R.R. § 146-3.5. Accordingly, the Court calculates Xochimitl's hourly rate for the period from January 1, 2011 to May 14, 2011 by dividing his fixed weekly wages of $512.50 by 40 hours, which amounts to an hourly rate of $12.81 and an overtime rate of $19.22. Compl. ¶ 60; Xochimitl Decl. ¶ 18. Because the fixed weekly rate is presumed to only compensate Xochimitl for a 40-hour workweek, he is entitled to compensation for an additional ten hours at $19.22 per hour. This amounts to $192.20 per week, and $3,651.80 for this 19-week period.

Xochimitl is also entitled to compensation at an overtime rate for the additional 15 hours he served as a delivery worker. Unlike the calculations for his work as a cook, the appropriate method for determining Xochimitl's rate of compensation remained consistent over this time period for his work as a delivery worker. Xochimitl's overtime rate for this work should be determined using the prevailing minimum wage of $7.25, because the $5.00 per hour that he was paid is well below that amount. He is thus entitled to an overtime rate of $10.88 an hour and should be compensated with an additional $5.88 per hour of delivery work, amounting to $88.20 per week and $2,646 for this 30-week period from October 16, 2010 to May 14, 2011.

Finally, while Xochimitl worked more than ten-hour shifts on several days during this time period, he is not entitled to spread of hours pay before January 2011. However, from January 1, 2011 on, any employee who worked such shifts was entitled to spread of hours pay, regardless of whether his hourly rate of pay was higher than the minimum wage. *See* 12 N.Y.C.R.R. § 146-2.4. Accordingly, Xochimitl should receive spread of hours pay, as he worked more than ten hours on Monday, Tuesday, Wednesday, Friday and Saturday from January 1, 2011 to May 14, 2011. *See* Compl. ¶ 51; Xochimitl Decl. ¶ 9. He is therefore entitled to an additional five hours of pay at the minimum wage rate, amounting to $36.25 per week and $688.75 for this 19-week period.

The Court finds that Xochimitl is thus entitled to recover unpaid minimum and overtime compensation as well as spread of hours pay of $7,550.85 for his work from October 16, 2010 until in or about May 14, 2011.

### c.    May 2011 to November 2012

From May 15, 2011 until about November 15, 2012 (approximately 79 weeks), Xochimitl worked as a cook and delivery worker at Pita Grill Ninth Avenue for 65 hours per week, on the same schedule. Compl. ¶ 51, Xochimitl Decl. ¶ 9.

Dividing his weekly wages of $537.50 by 40 hours, the Court calculates Xochimitl's hourly rate for his work as a cook in this period to be $13.44 and, because the fixed weekly rate is presumed to only compensate Xochimitl for a 40 hour work week, finds that he is entitled to compensation for an additional ten

23

hours at an overtime rate of $20.16 per hour. This amounts to $201.60 per week, and $15,926.40 for this 79-week period.

Xochimitl is also entitled to compensation at an overtime rate for the additional 15 hours he served as a delivery worker. His overtime rate for this work should be determined using the prevailing minimum wage of $7.25 and amounts to $10.88 an hour. He therefore should receive an additional $5.88 per hour of delivery work, totaling $88.20 per week and $6,967.80 for the 79-week period.

Finally, Xochimitl should be awarded spread of hours pay for the five days a week that he worked more than ten hours, which amounts to $36.25 a week and $2,863.75 for this 79-week period. *See* Compl. ¶ 51; Xochimitl Decl. ¶ 9.

The Court thus finds that Xochimitl is entitled to recover unpaid minimum and overtime compensation as well as spread of hours pay in the amount of $25,757.95 for his work from May 15, 2011 until about November 15, 2012.

### d.   November 2012 to March 2013

From November 16, 2012 until about March 15, 2013 (approximately 17 weeks), Xochimitl worked 50 hours per week as a cook at Pita Grill Ninth Avenue. Compl. ¶ 52; Xochimitl Decl. ¶ 10. Dividing his fixed weekly rate of $537.50 by 40 hours, the Court calculates Xochimitl's hourly rate for this work to be $13.44. Compl. ¶62; Xochimitl Decl. ¶ 20. Because the fixed weekly rate is presumed to compensate Xochimitl for 40 hours of work, he should have received an additional ten hours at an overtime rate of $20.16 per hour. Xochimitl consequently should be awarded an additional $201.60 per week, and $3,427.20 for this 17-week period.

24

Xochimitl also should have received spread of hours pay for the two days a week in which he worked shifts longer than ten hours. Compl. ¶ 52; Xochimitl Decl. ¶ 10. He is therefore entitled to an additional two hours of pay at minimum wage, amounting to $14.50 a week and $246.50 for this 17-week period. The Court thus finds that Xochimitl is entitled to recover unpaid minimum and overtime compensation as well as spread of hours pay of $3,673.70 for his work from November 16, 2012 to March 15, 2013.

e.    **March 2013 to May 2013**

From March 16, 2013 until about May 15, 2013 (approximately 9 weeks), Xochimitl continued to work as a cook at the Pita Grill Ninth Avenue. Compl. ¶ 53; Xochimitl Decl. ¶ 11. Xochimitl typically worked 37 hours per week and was paid a flat weekly rate of $397.75 per week. Compl. ¶ 63, Xochimitl Decl. ¶ 21. Dividing Xochimitl's fixed weekly salary by 37 hours because he worked less than a 40 hour workweek, the Court calculates his hourly rate to be $10.75. This hourly rate is higher than the prevailing minimum wage of $7.25. The Court will not award unpaid minimum wages during this period. While Xochimitl did not work more than 40 hours per week during this period and thus will not receive overtime compensation, he should be awarded spread of hours pay for the one day each week in which he worked a shift longer than ten hours. *See* Compl. ¶ 53; Xochimitl Decl. ¶ 11. He is therefore entitled to an additional one hour of pay at the minimum wage, amounting to $65.25 for this nine-week period.

25

### f.    May 2013 to January 2014

From May 16, 2013 until about January 15, 2014 (approximately 35 weeks), Xochimitl worked 63 hours per week for the Defaulting Defendants.  Compl. ¶¶ 54; Xochimitl Decl. ¶¶ 12.  He worked as a cook at Pita Grill Ninth Avenue for 37 hours per week and received a fixed weekly rate of $397.75.  Compl. ¶¶ 54, 64; Xochimitl Decl. ¶¶ 12, 22.  He also worked as a delivery worker at Pita Grill Third Avenue for 26 hours per week and received $5.00 per hour (or $130 per week) for his delivery duties.  Compl. ¶¶ 54, 64, Xochimitl Decl. ¶¶ 12, 22.

Dividing Xochimitl's fixed weekly salary by 37 hours because he worked less than a 40-hour workweek, the Court calculates Xochimitl's hourly rate for his work as a cook to be $10.75.  The Court will not award unpaid minimum wages during this period and Xochimitl is not entitled to any overtime compensation for his work as a cook because it did not exceed 40 hours.  Xochimitl's hours as a delivery worker, however, increased the hours in his workweek such that it exceeded 40 hours.  Because Xochimitl's wages for this work fall below the prevailing minimum wage, he should have been compensated for three hours of this work at $7.25 an hour until January 1, 2014, after which the minimum wage was increased and he should have been compensated for three hours of this work at $8 an hour.  The remaining 23 hours of his delivery work should be compensated using the overtime rate of $10.88 for the weeks prior to January 1, 2014 and an overtime rate of $12 from January 1, 2014 to January 15, 2014.

Consequently, for the work he performed from May 16, 2013 to December 31, 2013, Xochimitl is owed an additional $2.25 for three hours of delivery work and $5.88 for the remaining 23 hours that are credited as overtime, totaling $141.99 per week and $4,685.67 for the 33-week period. Likewise, for the period from January 1, 2014 to January 15, 2014, Xochimitl is entitled to an additional $3 for three hours of delivery work and $7 of overtime for the remaining 23 hours of delivery work, amounting to $170 a week and $340 for this two-week period.

Xochimitl is also entitled to spread of pay compensation for the four days a week that he worked shifts longer than ten hours. He is entitled to an additional four hours of pay at minimum wage, amounting to $29 a week for the period from May 16, 2013 to December 31, 2013 and $32 a week for the period from January 1, 2014 to January 15, 2014. In total, Xochimitl should therefore receive $957 for the period from May 16, 2013 to December 31, 2013 and $64 for the period from January 1, 2014 to January 15, 2014.

The Court thus finds that Xochimitl should be awarded unpaid minimum and overtime compensation as well as spread of hours pay of $6,046.67 for his work from May 16, 2013 to January 15, 2014.

### g.      January 2014 to March 2014

From January 16, 2014 through March 31, 2014 (approximately 11 weeks), Xochimitl worked at the Pita Grill Third Avenue restaurant as a delivery worker for 26 hours a week. The $5.00 per hour that Xochimitl received for his delivery duties fell below the prevailing minimum wage of $8.00 per hour. Compl. ¶ 55; Xochimitl

Decl. ¶ 13.  Xochimitl accordingly is entitled to additional compensation of $3.00 per hour for the 26 hours he worked as a delivery worker, amounting to $78 per week and $858 for the 11-week period.  He is not entitled to any overtime or spread of hours pay for this time period.

### h.     April 2014

In April 2014, Xochimitl worked at Pita Grill Amsterdam as a cook for three weeks, 60 hours per week.  Compl. ¶ 56; Xochimitl Decl. ¶ 14.  Applying the presumption that Xochimitl's flat weekly rate of $700 compensated him for a 40-hour work week, the Court calculates his hourly rate to be $17.50 and finds that he is owed additional overtime compensation for the 20 additional hours that he worked at a rate of $26.25 an hour.  Compl. ¶ 66; Xochimitl Decl. ¶ 24.  He therefore is entitled to overtime compensation in the amount of $525 per week and $1,575 for this three-week period.  Xochimitl provided no information about the length of his work shifts in April 2014 and therefore has not demonstrated that he is entitled to any spread of hours pay for this period.

### i.     May 2014 to September 2014

From May 1, 2014 until about September 6, 2014 (approximately 18 weeks), Xochimitl worked at Pita Grill 57 Street as a cook for 60 hours per week and received a flat weekly rate of $700 per week.  Comp. ¶¶ 57, 67; Xochimitl Decl. ¶¶ 15, 25.  According to the same calculations above, the Court determines that Xochimitl's hourly rate was $17.50 and finds that he is owed additional overtime compensation for the 20 additional hours that he worked at a rate of $26.25 an

hour. He therefore is entitled to overtime compensation in the amount of $525 per week and $9,450 for this 18-week period.  Xochimitl also should have received spread of hours pay for the one day a week that his shifts exceeded ten hours, amounting to $8.00 a week and $144 for this 18-week period.

The Court finds that Xochimitl is thus entitled to recover unpaid overtime compensation and spread of hours pay in the amount of $9,594 for his work from May 2014 to September 6, 2014.

### 3.   Xochimitl's Wage and Hour Damages Should Not Be Reduced Based on His Settlements with Other Defendants

Xochimitl contends that his damages should not be reduced based on the agreements that he entered into with other Defendants to settle claims arising out of the same wage and hour violations.  Pl.'s Findings and Conclusions ¶ 62. Pursuant to an October 2015 settlement agreement that Xochimitl entered into with Pita Grill of Hell's Kitchen Inc., Christopher Pennachio, and Robert Pennachio, these three Defendants were to pay Xochimitl a total of $60,000, with $20,000 of that amount going to his attorneys.  Pl.'s Letter, dated April 6, 2016, 2-3, Dkt. No. 37; Pl.'s Letter, dated April 6, 2016, Ex. A, Dkt. No. 37-1.  Xochimitl also executed a settlement agreement with Obam Management, Inc., PitaGrillNYC Corp., and Ofer Biton in April 2016 in which these three Defendants were to pay him $13,000, with $4,333 going to his attorneys. See Pl.'s Letter, dated April 6, 2016, 3; Pl.'s Letter, dated April 6, 2015, Ex. B, Dkt. No. 37-2.

"[F]ederal common law governs whether a defendant in an action brought under federal law 'is entitled to a credit against judgment for the settlement by

29

another party to the dispute.'" *Chloe v. Zarafshan*, No. 06-CV-03140 (RJH) (MHD), 2009 WL 2956827, at *7 (S.D.N.Y. Sept. 15, 2009) (citing *Singer v. Olympia Brewing Co.*, 878 F.2d 596, 599 (2d Cir. 1989)). "It is generally agreed that when a plaintiff settles with one of several joint tortfeasors, the nonsettling defendants are entitled to a credit for that settlement." *McDermott, Inc. v. AmClyde*, 511 U.S. 202, 208 (1994). However, "'where a non-settling defendant seeks a set-off, the burden rests squarely upon [defendants] to show the extent to which a recovery against it would be duplicative of [a plaintiff's] recovery from settling defendants.'" *Chen v. Yuen*, No. 04-CV-06579 (GBD) (KNF), 2015 WL 7758532, at *4-5 (S.D.N.Y. Dec. 1, 2015) (quoting *State Farm Mut. Auto. Ins. Co. v. Grafman*, 968 F. Supp. 2d 480, 483 (E.D.N.Y. 2013)). "Similarly, to receive an offset under state law, it is the non-settling defendant's responsibility to establish 'the equitable shares attributable to the settling defendants for purposes of reducing the amount of [the non-settling defendant's] responsibility for their damages." *Id.* at *4 (quoting *Bigelow v. Ascands, Inc.*, 196 A.D.2d 436, 438 (1st Dep't 1993). Accordingly, "[m]ost courts in the Second Circuit . . . have held that a defendant in default may not invoke the benefits of the set-off rule." *Gov't Employees Ins. Co. v. David Sanni-Thomas, D.O.*, No. 13-CV-4966 (MKB) (SMG), 2015 WL 5692875, at *11–12 (E.D.N.Y. Sept. 4, 2015) (collecting cases), *adopted sub nom. Gov't Employees Ins. Co. v. Zemlyansky*, 2015 WL 5692899 (E.D.N.Y. Sept. 27, 2015).

Xochimitl has provided no authority that applies these tort principles to FLSA or NYLL claims.[7]  The court in *Chen* addressed this issue and found that a defendant who had defaulted but later contested a report and recommendation in an inquest on FLSA and NYLL damages was not entitled to a set-off because he "provided no argument or authority demonstrating that the damages amount recommended . . . would be duplicative of the Plaintiffs' recovery from the settling defendants."  2015 WL 7758532, at *5.  Here, the Defaulting Defendants have filed no opposition to Xochimitl's claims and submitted no documentation whatsoever at the inquest stage.  The Defaulting Defendants have thus failed to carry their burden in establishing that they are entitled to an offset of damages and the Court declines to reduce Xochimitl's award against the Defaulting Defendants on this basis.

### D.  Statutory Damages for Wage Notice and Wage Statement Violations

Xochimitl seeks to recover damages for the Defaulting Defendants' failure to provide regular wage statements and annual wage notices as required by New York's Wage Theft Prevention Act ("WTPA"), which became effective on April 9, 2011.  Compl. ¶¶ 121-126; *see* N.Y. Lab. Law § 195.

### 1.  Applicable Legal Standards

The WTPA requires employers to provide, with every payment of wages, a statement that lists the following:

---

[7] The only wage-and-hour decision this Court has identified on the issue, *Chen*, 2015 WL 7758532, at *5, also notes the dearth of caselaw in this area.

> the dates of work covered by that payment of wages; name of employee;
> name of employer; address and phone number of employer; rate or
> rates of pay and basis thereof, whether paid by the hour, shift, day,
> week, salary, piece, commission, or other; gross wages; deductions;
> allowances, if any, claimed as part of the minimum wage; and net
> wages.... [T]he statement shall include the regular hourly rate or rates
> of pay; the overtime rate or rates of pay; the number of regular hours
> worked, and the number of overtime hours worked.

N.Y. Lab. Law § 195(3). "The WTPA does not apply retroactively, and thus prior to

April 9, 2011, defendants were not obligated to provide plaintiffs with wage

statements." *See Baltierra*, 2015 WL 5474093, at \*10 (citing *Haas v. Verizon New*

*York Inc.*, No. 13-CV-8130 (RA) (JLC), 2015 WL 4884858 (S.D.N.Y. Aug. 13, 2015),

*adopted in part, rejected in part on other grounds*, 2015 WL 5785023 (S.D.N.Y. Sept.

30, 2015)). As of April 9, 2011 and prior to February 27, 2015, "[t]he WTPA entitled

employees to recover statutory damages for violations of the wage statement

requirement of $100 per work week, not to exceed $2,500." *Id.*; *see* 2010 N.Y. Laws

Ch. 564 § 7, amending N.Y. Lab. Law § 198 (1-d).[8]

   The WTPA also requires that employers furnish each employee with a wage

notice at the time of hiring that contains the following information:

> the rate or rates of pay and basis thereof, whether paid by the hour,
> shift, day, week, salary, piece, commission, or other; allowances, if any,
> claimed as part of the minimum wage, including tip, meal, or lodging
> allowances; the regular pay day designated by the employer in
> accordance with section one hundred ninety-one of this article; the
> name of the employer; any "doing business as" names used by the
> employer; the physical address of the employer's main office or
> principal place of business, and a mailing address if different; the
> telephone number of the employer; plus such other information as the
> commissioner deems material and necessary.

---

[8] Statutory damages for WTPA violations were increased on February 27,
2015. *See* 2014 N.Y. Laws Ch. 537 § 2; *Inclan*, 95 F. Supp. 3d at 501.

N.Y. Lab. Law § 195(1)(a). As of April 9, 2011 and prior to December 29, 2014, the WTPA required employers, in addition to the wage notice at time of hiring, to provide wage notices "on or before February first of each subsequent year of the employee's employment with the employer." N.Y. Lab. Law § 195 (1)(a) (eff. April 9, 2011 to Dec. 28, 2014).[9] As of April 9, 2011 and prior to February 27, 2015, the WTPA entitled employees to recover, as statutory damages for violations of the wage notice requirement, $50 per work week, not to exceed $2,500. 2010 N.Y. Laws. Ch. 564 § 7, amending N.Y. Lab. Law § 198 (1-b).

### 2.   Application

Xochimitl alleges that he never received either wage statements or wage notices from the Defaulting Defendants. Compl. ¶¶ 86, 88; Pl.'s Findings and Conclusions ¶ 28; Xochimitl Decl. ¶ 33-35. Xochimitl contends that he is therefore entitled to an award of statutory damages in the amount of: $7,100 against Orfaly and Perez, and $2,500 against East Meets West, LLC for wage statement violations; as well as $3,550 against Orfaly and Perez and $2,500 against East Meets West, LLC for wage notice violations. Pl.'s Findings and Conclusions ¶¶ 49, 51. Xochimitl alleges that he is "entitled to recover from Orfaly and Perez for each location he worked . . . [and] from East Meets West LLC for the violations that occurred at Pita Grill Third Avenue." Pl.'s Findings and Conclusions ¶ 49.

---

[9] Following December 29, 2014 the WTPA was amended such that the annual February notice is no longer required. N.Y. Lab. Law § 195(1)(a).

By virtue of the default in this case, the Court accepts as true Xochimitl's allegation that he never was given any documents "that reflected the hours [he] worked (either daily, weekly, or by any other measure), [his] hourly rate of pay, overtime, or any other record or report regarding [his] pay, hours worked, or any deductions or credits taken against [his] wages" as required by NYLL § 195(3). Compl. ¶¶ 86, 88; Xochimitl Decl. ¶ 33. The Court thus finds that Xochimitl is entitled to receive statutory damages of $100 per each week that he worked after April 29, 2011.

The Court likewise accepts as true Xochimitl's contention that the Defaulting Defendants never provided him with "a written notice of [his] rate of pay, employers' regular pay day, and such other information as required by NYLL § 195(1)." Xochimitl Decl. ¶ 34; Compl. ¶¶ 86, 88. Xochimitl was hired in May 2008, prior to the April 9, 2011 effective date of the WTPA, and he accordingly is not entitled to damages for the Defaulting Defendants' failure to provide him a wage notice on the date he was hired. Xochimitl Decl. ¶ 5. However, Defendants were obligated to provide Xochimitl with annual wage notices as of February 2012. *See* N.Y. Lab. Law § 195(1)(a) (eff. April 9, 2011 to Dec. 28, 2014). Xochimitl consequently may recover statutory damages of $50 for each week that he did not receive a wage notice following February 2012, which is the date at which Defaulting Defendants were first required to begin providing such notices to him. *See, e.g.*, *Andrade*, 2016 WL 3141567, at *9; *Baltierra*, 2015 WL 5474093, at *10.

While the Court finds that Xochimitl is entitled to statutory damages for wage statement and wage notice violations, Xochimitl alleges that he is entitled to statutory damage awards that are greater than the $2,500 limits set out under NYLL §§ 195(1), (3), and he seeks to hold the individual and corporate Defaulting Defendants separately liable. Xochimitl's proposed findings and conclusions provide no explanation for these requests but merely assert that he is entitled to recover from the individual Defaulting Defendants for each location at which he worked and from East Meets West LLC for violations that occurred at Pita Grill Third Avenue. Pl.'s Findings and Conclusions ¶ 49. The Court declines to award damages beyond the statutory limit set by NYLL §§ 195(1), (3) on the basis of Xochimitl's employment at multiple Pita Grill Restaurants, and neither will it hold Orfaly and Perez and East Meets West LLC separately responsible for statutory damages under NYLL §§ 195(1), (3).

Xochimitl also fails to provide authority to support an award of statutory damages against the Defaulting Defendants based on his employment at multiple restaurants that they owned. Instead, the Court notes that an award of statutory damages greater than $2,500 is inconsistent with Xochimitl's complaint in which he pled that Defendants operated these restaurants as "a joint or unified enterprise." Compl. ¶ 1. Xochimitl has also asserted throughout his inquest submissions that he is entitled to recover unpaid wages from the Defaulting Defendants for his work at all four Pita Grill Restaurants, thereby taking a position that treats the Pita Grill Restaurants as a single enterprise. Furthermore, courts in this District routinely

routinely apply the $2,500 limit on employees' recovery of statutory damages

pursuant to §§ 195(1), 195(3) in cases involving multiple defendants. *See, e.g.,*

*Andrade,* 2016 WL 3141567, at *9; *Baltierra*, 2015 WL 5474093, at *10; *Nunez v.*

*Francis Deli Grocery*, No. 13-CV-4894 (ER) (KNF), 2015 WL 1963630, at *6

(S.D.N.Y. Apr. 30, 2015). Given Xochimitl's otherwise consistent representations

that the Pita Grill Restaurants should be treated jointly for the purpose of

calculating damages, the Court will not treat the Pita Grill Restaurants separately

solely for the purpose of determining statutory damages pursuant to NYLL §§

195(1), (3).

The Court therefore recommends that Xochimitl be awarded $2,500 in

damages pursuant to NYLL §§ 195(1) and 195(3), respectively. The Court thus

recommends a total award of $5,000 against the Defaulting Defendants for

violations of wage statement and notice requirements under NYLL §§ 195(1), (3).

### E.    Liquidated Damages Pursuant to the FLSA and NYLL

Xochimitl seeks liquidated damages pursuant to both the FLSA and NYLL.

Pl.'s Findings and Conclusions ¶ 46; Androphy Decl. ¶ 5(d). Xochimitl contends

that he is entitled to liquidated damages against Orfaly and Perez in the amount of

$41,559.76 under the FLSA; $88,940.24 under NYLL for minimum wage and

overtime violations; and $5,406.05 for NYLL spread of hours damages. Pl.'s

Findings and Conclusions ¶ 46; Androphy Decl. ¶ 5(d), Ex. 2. He also contends that

he should be awarded liquidated damages against East Meets West LLC in the

amount of $2,691 under the FLSA and $2,944.50 under NYLL for minimum wage violations. *Id.*

### 1.   Applicable Legal Standards

Under the FLSA, a plaintiff who demonstrates that he was improperly denied either minimum or overtime wages may recover, in addition to reimbursement of these unpaid wages, an "additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  The FLSA, however, permits courts the "discretion to deny liquidated damages where the employer shows that, despite its failure to pay appropriate wages, it acted in subjective 'good faith' with objectively 'reasonable grounds' for believing that its acts or omissions did not violate the FLSA." *Barfield v. N.Y. City Health & Hospitals Corp.,* 537 F.3d 132, 142 (2d Cir. 2008).  The Second Circuit has noted that "the employer's burden [is] 'a difficult one,' emphasizing that 'double damages [are] the norm and single damages the exception.'" *Id.* (quoting *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 142 (2d Cir. 1999)).  In situations where "defendants never made this showing in light of their default, they have not rebutted the presumption in favor of a liquidated damages award." *Guaman v. J & C Top Fashion, Inc.,* No. 14-CV-8143 (GBD) (GWG), 2016 WL 791230, at *7 (S.D.N.Y. Feb. 22, 2016).  "Where a Plaintiff is entitled to liquidated damages under the FLSA, but has been awarded wage and overtime damages pursuant to the NYLL because state law provided the greater relief, the Court calculates FLSA liquidated damages based on 'the amount of actual damages that would have been

awarded had the federal minimum wage rate applied.'" *Kernes*, 2016 WL 880199, at

*4 (quoting *Angamarca*, 2012 WL 3578781, at *8).

The NYLL also authorizes liquidated damages. As of November 24, 2009, an

employee was entitled to NYLL liquidated damages "unless the employer proves a

good faith basis for believing that its underpayment of wages was in compliance

with the law." N.Y. Lab. Law § 198(1–a). This represents a change from the prior

standard in which an employee was entitled to damages "only if he showed that his

employer's violation of the NYLL was willful." *Inclan*, 95 F. Supp. 3d at 505.

Courts deem defendants' actions willful where they have defaulted, *see, e.g.*,

*Angamarca*, 2012 WL 3578781, at *8, and, consequently, such defaulting

defendants will have "[o]bviously . . . made no showing of 'good faith.'" *Guaman*,

2016 WL 791230, at *7. "The NYLL was further amended in 2010 to increase the

liquidated damages award from 25% to 100%, but this change, which became

effective April 9, 2011, is only to be applied prospectively." *Garcia v. JonJon Deli

Grocery Corp.*, No. 13-CV-8835 (AT), 2015 WL 4940107, at *5 (S.D.N.Y. Aug. 11,

2015) (citing *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 143 (2d Cir. 2013)); N.Y.

Lab. Law §§ 198(1–a), 663(1).

"There is no appellate authority as to whether a plaintiff may recover

cumulative (sometimes called 'simultaneous' or 'stacked') liquidated damages under

the FLSA and NYLL, and the district courts in this Circuit are deeply divided" on

this issue. *Inclan*, 95 F. Supp. 3d at 505. Courts that have awarded cumulative

damages have based their rulings on the premise that "because liquidated damages

under the FLSA and NYLL 'serve fundamentally different purposes,' a court may order separate awards under both statutes." *See, e.g., Kernes,* 2016 WL 880199, at *5; *Herrara*, 2016 WL 1274944, at *9. These courts view liquidated damages under the FLSA "as 'compensation, not a penalty,' . . . whereas the NYLL's liquidated damages provision is said to 'constitute a penalty.'" *Inclan*, 95 F. Supp. 3d at 505 (collecting cases).

"[T]he Second Circuit has impliedly recognized that the liquidated damages provisions serve different goals." *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 593 (S.D.N.Y. 2012). In *Reich v. S. New England Telecomm. Corp.,* 121 F.3d 58, 71 (2d Cir. 1997), the Second Circuit noted that liquidated damages under the FLSA are not a penalty, but rather a means of compensating employees "for losses they might suffer by reason of not receiving their lawful wage at the time it was due," while in *Reilly v. Natwest Markets Grp., Inc.*, 181 F.3d 253, 265 (2d Cir. 1999), it described liquidated damages under NYLL as designed to "'constitute a penalty' to deter an employer's willful withholding of wages due." This position has been described as the "majority" view, and a number of courts have opted to follow it for this reason. *See e.g., Rosendo*, 2015 WL 1600057, at *5-6; *Kernes*, 2016 WL 880199, at *5; *Ni v. Bat-Yam Food Services, Inc.*, No. 13-CV-07274 (ALC) (JCF), 2016 WL 369681, at *2-3 (S.D.N.Y. Jan. 27, 2016) (collecting cases); *Melgadejo v. S & D Fruits & Vegetables Inc.*, No. 12-CV-6852 (RA) (HBP), 2015 WL 10353140, at *16 (S.D.N.Y. Oct. 23, 2015), *adopted by*, 2016 WL 554843 (S.D.N.Y. Feb. 9, 2016) .

At the same time, several courts have recognized an "emerging jurisprudential trend" toward denying cumulative liquidated damages under both the FLSA and NYLL. *Hengjin Sun v. China 1221, Inc.*, No. 12-CV-7135 (RJS), 2016 WL 1587242, at *4 (S.D.N.Y. Apr. 19, 2016) (internal citations and quotation marks omitted) (collecting cases); *see, e.g., Andrade*, 2016 WL 3141567 at *7-8 (collecting cases); *Castillo*, 2016 WL 1417848, at *2; *Zhen Ming Chen v. New Fresco Tortillas Taco, LLC*, No. 15-CV-2158 (RA) (AJP), 2015 WL 5710320, (S.D.N.Y. Sept. 25, 2015).  Courts taking this approach have often "declined to award cumulative liquidated damages on the ground that 'the distinction between compensatory and punitive for characterizing liquidated damages under the FLSA and NYLL [is] semantic, exalting form over substance.'" *Inclan*, 95 F. Supp. 3d at 505-06 (quoting *Gortat v. Capala Bros.,* 949 F. Supp. 2d 374, 381 (E.D.N.Y. 2013)); *Santana v. Brown*, No. 14-CV-4279 (LGS), 2015 WL 4865311, at *5 (S.D.N.Y. Aug. 12, 2015) ("changes in the NYLL's liquidated damages provision have rendered any distinction between the FLSA . . . and the NYLL liquidated damages . . . largely illusory") (citations and internal quotation marks omitted).  These courts reason that, practically, both provisions serve both compensatory and deterrent purposes – both "seek to deter wage-and-hour violations in a manner calculated to compensate the party harmed." *Inclan*, 95 F. Supp. 3d at 506 (citation and internal quotation marks omitted).

A number of courts have found that the recent amendments to the standard for NYLL liquidated damages support this argument, for "the view that NYLL

liquidated damages were penalties rather than compensation rested on the premise that NYLL liquidated damages required proof of the employer's willfulness." *Morales v. Mw Bronx, Inc.*, No. 15-CV-6296 (TPG), 2016 WL 4084159, at \*9 (S.D.N.Y. Aug. 1, 2016); *Hengjin Sun*, 2016 WL 158742, at \*4 (denying cumulative damages on grounds that NYLL amendments "bring the two statutes more directly in line with one another . . . since both entail substantively similar 'good faith' standards and award 100% liquidated damages") (citations and internal quotation marks omitted); *Inclan*, 95 F. Supp. 3d at 506. "As the standards for liquidated damages under both statutes have now coalesced, there is no longer a rationale for cumulative recovery." *Garcia*, 2015 WL 4940107, at \*6. Courts have also found that the amendments that "provide for 100 percent liquidated damages" undermine the distinction between the statutes, for "'[t]o the extent that federal and state statutes now provide for essentially identical remedies . . . it is harder to argue that they are designed to compensate a plaintiff for disparate harms.'" *Castillo*, 2016 WL 1417848, at \*2 (citations and internal quotation marks omitted). Accordingly, some have argued that permitting cumulative damages is "effectively a judge-created treble damage remedy that neither the legislature, Congress or New York, had envisioned." *Andrade*, 2016 WL 3141567, at \*7; *Castillo*, 2016 WL 1417848, at \*2 ("Nothing in either statute suggests that the legislators envisioned or intended that successful plaintiffs would reap what in effect are three times their damages, rather than double their damages as the statutes explicitly provide.").

41

To gain insight as to whether the New York legislature did in fact envision such a treble damages remedy, this Court has examined the sponsors' memoranda to the bills that changed the standard for obtaining liquidated damages and increased the liquidated percentage. The memorandum in support of the amendment to change the NYLL standard for liquidated damages does not explicitly repudiate the punitive purpose of NYLL liquidated damages, but instead refers to "the inherent unfairness of requiring employees who have already proven they were underpaid to further prove the underpayment was willful[, a burden that] . . . rightfully rests with the employer." N.Y. Spons. Memo., 2009 A.B. 6963, Leg. 232, Reg. Sess. (April 8, 2009).[10] The memorandum nevertheless acknowledges that this amendment "would also conform New York law to the Fair Labor Standards Act and the laws of other states that allow workers liquidated damages once they establish that their employer violated the wage law." *Id.* This stated aim to *conform* NYLL to the FLSA's more permissive standard indicates an interest in lowering the bar for relief that, like the FLSA, does not depend on a showing of willfulness and thus may be inconsistent with a strictly punitive purpose. It also links the new standard to its practical effect of aiding "low wage workers struggling to support their families on minimum wage. . . [whose] employers have failed for years" to pay the minimum wage, apparently contemplating the compensatory effects of the amendment. *Id.* At the same time, the sponsors' memorandum in

---

[10] The memo may be found at https://www.nysenate.gov/legislation/bills/2009/A6963.

support of the increase of the percentage of liquidated damages maintains an emphasis on the punitive purpose of NYLL liquidated damages, stating that the "penalties currently in place for employers paying less than minimum wage are minimal and offer little deterrent [which] will change dramatically with this legislation." N.Y. Spons. Memo., 2010 S.B.8380, Leg. 233, Reg. Sess. (Oct. 28, 2010).[11]

The two memoranda accordingly suggest that, while New York legislators did not intend to abandon the punitive and deterrent purposes of NYLL liquidated damages, they sought to expand its benefits to all employees affected by wage-and-hour violations and were also mindful of and motivated by the impact that this amendment would have on individuals who had been denied adequate wages for years. While they do not clearly reveal the legislature's position as to whether treble damages should be available, this legislative history, such as it is, does suggest an interest in aligning NYLL liquidated damages with the FLSA and can be read as a practical recognition of the dual punitive and compensatory effects of an award of liquidated damages under the statute.

This Court has previously ruled that liquidated damages should be awarded under both the FLSA and NYLL. *See, e.g.*, *Yuquilema*, 2014 WL 4207106; *Angamarca*, 2012 WL 3578781, at *3; *Maldonado*, 2012 WL 1669341, at *3. Although this approach continues to be followed by many courts, this Court is

---

[11] The memo may be found at https://www.nysenate.gov/legislation/bills/2009/S8380.

NYLL, the FLSA and NYLL standards for liquidated damages "have now coalesced" and arguments about the different purposes of the FLSA and NYLL liquidated damages provisions are less compelling. *Garcia*, 2015 WL 4940107, at *6. While certainly not conclusive, the sponsors' memoranda regarding the NYLL amendments suggest that, while the legislature maintained a stated interest in punishment and deterrence, they also expressed a desire to align NYLL with the FLSA as well as a recognition of the impact such an award would have on the majority of employees who successfully demonstrate a violation.  In light of all of the above, the Court is persuaded that, as a practical matter, both provisions serve compensatory and deterrent purposes, thereby undermining the distinction between the FLSA and amended NYLL standards and cutting against the premise upon which the Court's prior decisions were based.

Accordingly, the Court recommends that Plaintiffs should not be awarded liquidated damages under both the FLSA and NYLL for the same time period following April 9, 2011, the effective dates of the NYLL amendment increasing the liquidated damages award from 25% to 100%.  Because Xochimitl is only eligible for FLSA damages after December 31, 2011, he may only recover liquidated damages under either the FLSA or the NYLL for his employment at the Pita Grill Restaurants.  The Court will calculate Xochimitl's liquidated damages award under

Restaurants. The Court will calculate Xochimitl's liquidated damages award under NYLL as it provides the greatest relief. *Maldonado,* 2012 WL 1669341, at \*5; *Castillo*, 2016 WL 1417848, at \*3.[12]

### 2.    Application

By virtue of their default, the Defaulting Defendants' wage-and-hour violations are considered to have been willful and not committed in good faith. Xochimitl therefore is entitled to liquidated damages of 25% of his unpaid minimum and overtime wages and spread of hours pay stemming from his employment from December 31, 2008 to April 8, 2011. Xochimitl is also eligible for liquidated damages of 100% of the minimum and overtime wages and spread of hours pay that he should have received for his work from April 9, 2011 until September 6, 2014.

The Court recommends that Xochimitl be awarded $18,014.95 in damages for unpaid minimum and overtime compensation stemming from his work from December 31, 2008 to April 8, 2011. Xochimitl is also entitled to $507.50 in unpaid spread of hours pay for this same time period. Xochimitl accordingly should receive 25% of the total $18,522.45 owed for these months, which amounts to $4,630.61 in liquidated damages. Xochimitl is also entitled to 100% of the damages he is owed for the minimum and overtime compensation that he should have received for the

---

[12] Xochimitl is eligible for liquidated damages of 100% under NYLL for a longer period (from April 9, 2011 on) than under the FLSA (from December 31, 2011 on). Xochimitl is also eligible for liquidated damages of 25% under NYLL from December 31, 2008 to April 8, 2011 and may collect liquidated damages for minimum wage, overtime, and spread of hours pay under NYLL.

weeks he worked from April 9, 2011 to September 6, 2014, which amounts to $44,632.07 in liquidated damages. Finally, Xochimitl should have been paid $4,521.75 for spread of hours pay in this time period and he should therefore receive the same amount as liquidated damages. Accordingly, the Court recommends that Xochimitl be awarded liquidated damages in the amount of $53,784.43.

The Court notes that Xochimitl requested that it award liquidated damages in separate amounts as against Orfaly and Perez and East Meets West LLC. However, he has provided no explanation or support for why the Court should do so. As discussed in Section II(D)(2) above, the Court declines to treat the Defaulting Defendants differently for the purpose of calculating damages at inquest because Xochimitl has represented that all Defendants operated the Pita Grill Restaurants as a joint enterprise and joint employers.

### F.   Prejudgment Interest

Xochimitl seeks prejudgment interest on the minimum wage, overtime compensation, and spread of hours damages for which FLSA liquidated damages are not awarded. Pl.'s Findings and Conclusions ¶ 53. As the Court declined to award cumulative liquidated damages pursuant to the FLSA and NYLL, only awarding liquidated damages under NYLL, Xochimitl is eligible for an award of prejudgment interest on the full $67,676.27 in damages arising out of his NYLL unpaid minimum, overtime, and spread of hours wage claims.

"The Second Circuit has held that even where a plaintiff is awarded liquidated damages under the NYLL, prejudgment interest still is appropriate."

*Andrade*, 2016 WL 3141567, at \*10 (citing *Reilly*, 181 F.3d at 265); *Morales*, 2016 WL 4084159, at \*10 ("Interest is not awarded under the FLSA when FLSA liquidated damages are awarded, as interest is assumed to be included under liquidated damages . . . However, prejudgment interest is still appropriate where a plaintiff is awarded liquidated damages under the NYLL."). "Prejudgment interest applies only to the amount of compensatory damages, and excludes the amount of liquidated damages." *Maldonado*, 2012 WL 1669341, at \*11.

State law provides that interest shall be at the rate of nine percent per year. N.Y. C.P.L.R. § 5004. Where damages are incurred "at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001. "Simple prejudgment interest is calculated from a singular, midpoint date . . . [and] by multiplying the principal by the interest rate by the time period – from a singular, midpoint date – up until and including the date judgment is entered." *Maldonado*, 2012 WL 1669341, at \*11. "In determining the appropriate midpoint date, courts commonly look for the 'median date between the earliest ascertainable date the cause of action existed and the date the action was filed [or last date the cause of action existed].'" *Yuquilema*, 2014 WL 4207106, at \*12 (alteration in original) (quoting *Gunawan v. Sake Sushi Rest.,* 897 F.Supp.2d 76, 93 (E.D.N.Y.2012) (collecting cases)).

Although Xochimitl began working for defendants in May 2008, the earliest date on which his NYLL cause of action existed is December 31, 2008, while his

employment ended on September 6, 2014.  The approximate midpoint date between those two limits for calculating his prejudgment interest is therefore November 4, 2011.  Consequently, Xochimitl should receive prejudgment interest on a principal of $67,676.27 at an interest rate of nine percent per year as applied from November 4, 2011 to the date of entry of judgment.

### G.   Post-Judgment Interest

Xochimitl's complaint alleges that he seeks post-judgment interest as applicable and he renews this request in his Findings and Conclusions.  Compl. at 26; Pl.'s Findings and Conclusions ¶ 57.  Awards of post-judgment interest are governed by federal statute.  28 U.S.C. § 1961(a) states that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  Post-judgment interest is "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment."  *Id.*  "Such interest accrues automatically by operation of law, and the Court of Appeals has consistently held that an award of post-judgment interest is mandatory."  *Morales*, 2016 WL 4084159, at *11 (citing Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008)).  Accordingly, Xochimitl is entitled to post-judgment interest calculated in accordance with 28 U.S.C. § 1961.

### H.   Attorneys' Fees and Costs

Xochimitl requests an award of attorneys' fees in the amount of $18,902.50 and costs in the amount of $700, for a total of $19,602.50.  Pl.'s Findings and

Conclusions ¶ 61; Androphy Decl. Ex. 3. Xochimitl is represented by the firm of

Michael Faillace & Associates, P.C. Androphy Decl. ¶ 7. Both the FLSA and NYLL,

are fee-shifting statutes, which entitle a prevailing plaintiff to recover his

reasonable attorney's fees and costs. 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-3);

see, e.g., *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 595 (S.D.N.Y. 2012).

### 1.    Attorneys' Fees

"In order to determine the appropriate fee award, courts typically start by

determining the so-called lodestar amount, or 'the product of a reasonable hourly

rate and the reasonable number of hours required by the case.'" *Yuquilema*, 2014

WL 4207106, at *14 (citing *Millea v. Metro-North R.R.*, 658 F.3d 154, 166 (2d Cir.

2011)). As a general matter, "[b]oth the [Second Circuit] and the Supreme Court

have held that the lodestar . . . creates a presumptively reasonable fee." *Gurung*,

2012 WL 691532, at *10 (quoting *Millea v*, 658 F.3d at 166); see also *Angamarca*,

2012 WL 3578781, at *10.

A plaintiff must "document the application [for fees and costs] with

contemporaneous time records . . . specify[ing], for each attorney, the date, the

hours expended, and the nature of the work done." *New York State Assn'n for

Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983); see also *Scott

v. City of N.Y.*, 626 F.3d 130, 132 (2d Cir. 2010). "The burden is on the fee applicant

to produce satisfactory evidence that the requested rates are in line with those

prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience, and reputation." *Angamarca*, 2012 WL 3578781, at

*11. A court may also rely on its own knowledge of local comparable rates. *See Yuquilema,* 2014 WL 4207106, at *13; *Adorno v. Port Authority of N.Y. & N.J.,* 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010). Counsel for the prevailing party must submit evidence in support of the proposed figures and make a good faith effort to exclude excessive, redundant, or unnecessary hours from the fee request. *Quaratino v. Tiffany & Co.,* 166 F.3d 422, 426 n.6 (2d Cir. 2008). Ultimately, a court's discretion to set a fee award is broad. *Hensley v. Eckethart,* 461 U.S. 424, 437 (1989); *Matusick v. Erie Cnty. Water Auth.,* 757 F.3d 31, 64 (2d Cir. 2014) ("We afford a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's superior understanding of the litigation and . . . what essentially are factual matters.") (internal citations and quotation marks omitted).

### a.   Reasonable Hourly Rate

"'The reasonable hourly rate is the rate a paying client would be willing to pay,' bearing in mind that a 'reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively.'" *Yuquilema,* 2014 WL 4207106, at *13 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182, 190 (2d Cir. 2008)). "To assess the reasonable rate, the Court considers the prevailing market rates 'for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *See Maldonado,* 2012 WL 1669341, at *12 (quoting *Gierlinger v. Gleason,* 160 F.3d 858, 882 (2d Cir. 1998)). Courts in this District have determined in recent cases that a fee in the range of $250 to $450

50

is appropriate for experienced litigators in wage-and-hour cases. *See Cortes v. New Creators*, No. 15-CV-5680, 2016 WL 3455383, at *7 (S.D.N.Y. Jun. 20, 2016); *Kernes v*, 2016 WL 880199, at *10; *Yuquilema*, 2014 WL 4207106, at *14 (collecting cases).

Xochimitl seeks to recover fees for work performed by two attorneys, Michael Faillace and Joshua Androphy. Androphy Decl. ¶¶ 6-7, Ex. 3. Faillace is the managing member of the firm and has been in practice since 1983. Androphy Decl. ¶ 7(a). In addition to serving as in-house employment counsel at International Business Machines between 1983 and 2000, he has taught employment discrimination at Fordham University and Seton Hall University law schools and speaks on employment law matters. *Id*. Xochimitl seeks reimbursement for Faillace's fees at his standard billing rate of $450 an hour. *Id*. Androphy is a senior attorney at the firm and has practiced litigation since 2005. Androphy Decl. at ¶ 7(b). Xochimitl seeks reimbursement for Androphy's fees at his regular hourly rate of $400 per hour. *Id*.

Several courts in this District have recently awarded attorneys' fees at lower rates for both Faillace and Androphy in cases that are "relatively simple because the defendants defaulted." *See, e.g., Andrade*, 2016 WL 3141567, *11 (awarding $425 rate to Faillace and $300 rate to Androphy); *Rosendo*, 2015 WL 1600057, at *3 (reducing Faillace's rate to $400 and Androphy's rate to $300). "While there is no doubt that Faillace is highly experienced, given the relative simplicity of this case, the Court finds it appropriate to reduce Faillace's requested rate to $425 an hour" in this case. *Yuquilema*, 2014 WL 4207106, at *14; *see also Galeana v. Lemongrass on*

51

*Broadway Corp.*, No. 10-cv-7270 (GBD) (MHD), 2014 WL 1364493, at *13-14

(S.D.N.Y. Apr. 4, 2014) (reducing Faillace's rate from $450 to $425 given relatively

straightforward procedure of default judgment and absence of novel issues);

Angamarca, 2012 WL 3452417, at *3 (awarding Faillace his requested hourly rate

of $450, but reducing attorney's fees overall by 15% in light of the simplicity of the

case). Androphy's requested fees should also be reduced to $300 an hour, "a more

appropriate hourly rate" for "an associate with his level of comparable experience."

*Yuquilema,* 2014 WL 4207106, at *14 (reducing Androphy's fees to $300);

*Apolinario v. Luis Angie Deli Grocery Inc.*, No. 1:14-CV-2328 (GHW), 2015 WL

4522984, at *3 (S.D.N.Y. July 27, 2015) (approving a rate of $300 per hour for

Androphy). Accordingly, the Court recommends that any attorneys' fees awarded

be calculated using the reasonable rates of $425 per hour for Faillace and $300 per

hour for Androphy.

### b.   Reasonable Hours Expended

"After determining the appropriate hourly billing rate, the [C]ourt calculates

the hours reasonably expended." *Maldonado*, 2012 WL 1669341, at *13 (internal

citation and quotation marks omitted). In determining the reasonable number of

hours required by a case, the critical inquiry is "whether at the time the work was

performed, a reasonable attorney would have engaged in similar time

expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992). Courts must

make "a conscientious and detailed inquiry into the validity of the representations

that a certain number of hours were usefully and reasonably expended." *Lunday v.*

*City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). "If the Court finds that some of the claimed hours are 'excessive, redundant or otherwise unnecessary,' it may reduce the number of reasonable hours accordingly." *Bumble & Bumble, LLC v. Pro's Choice Beauty Care, Inc.*, No. 14-CV-6911(VEC) (JLC), 2016 WL 658310, at *9 (S.D.N.Y. Feb. 17, 2016) (quoting *Hensley v. Eckhart,* 461 U.S. 424, 434 (1983)), *adopted by,* 2016 WL 1717215 (S.D.N.Y. Apr. 27, 2016).

In prior decisions, this Court and others have reduced or excluded attorneys' hours that were expended on matters related to non-defaulting defendants, finding that defaulting defendants are not responsible for attorneys' fees related to other, non-defaulting defendants in the case and that, where attorneys seek fees that were billed for services related to both non-defaulting and defaulting defendants, such mixed fees should be reduced by a percentage. *See, e.g., Bumble and Bumble, LLC,* 2016 WL 658310, at *9-10 (declining to award fees arising from services related to other defendants); *Tamel Dixon v. Correction Officer Richard Agbai*, 15-CV-850 (AT) (AJP), 2016 WL 3702749 (S.D.N.Y. July 8, 2016) (reducing attorneys' fees by 40 percent across-the-board where billing entries involved services related to non-defaulting defendants who had settled and "the settlement reached . . . was inclusive of attorneys' fees"); *Laboratorios Rivas,* 2013 WL 5977440, at *17 (awarding 10% of fees claimed for tasks that related to defaulting defendants only in part, such as investigations, drafting amended complaint, and serving various defendants); *Lucerne Textiles v. H.C.T. Textiles Co.*, No. 11-CV-5456 (KMW) (AJP), 2013 WL 174226, at *9 (S.D.N.Y. Jan. 17, 2013) (stating that defaulting defendants

are "not responsible for fees related to [plaintiff's] claims against other parties," and

therefore not awarding attorneys' fees for hours spent "discuss[ing] settlement"

with other defendants) (collecting cases); *Colon v. City of New York*, No. 09-CV-8

(JBW) (CLP), 2012 WL 691544, at *22 (E.D.N.Y. Feb. 9, 2012) (recommending

denial of fees for tasks unrelated to plaintiff's case against defaulting defendants).

Xochimitl has provided the Court with the contemporaneous billing records of

his counsel at Michael Faillace & Associates, P.C., which include hours expended,

dates of work, and brief descriptions of the tasks performed by his attorneys.

Androphy Decl., Ex. 3. Xochimitl seeks an award of $18,902.50 in attorneys' fees,

which the Court breaks down according to counsel's billing records as follows:

$4,432.50 for 9.85 hours of work completed by Faillace and $14,320 for 35.80 hours

of work by Androphy. Pl.'s Findings and Conclusions ¶ 61; Androphy Decl. Ex 3.[13]

Upon review of counsel's billing records, the Court finds that Androphy billed

14.80 hours on services that related exclusively to the Defaulting Defendants, such

as drafting the default judgment motion, finalizing the order to show cause, and

preparing Xochimitl's proposed findings of fact and conclusions of law. Androphy

Decl. Ex. 3. The Court finds these 14.80 hours to be reasonable and in line with

what other courts in this District have approved. *See, e.g.*, *6D Global Technologies,*

*Inc. v. Bei Lu*, 15-CV-1120, 2016 WL 1756920, at *3 (S.D.N.Y. 2016) (finding 28.5

---

[13] The Court calculates a total of $18,752.50 ($4432.50 plus $14,320), which is $150
less than the total sought by Xochimitl.

hours spent on default judgment claim reasonable).  The Court accordingly

recommends that Xochimitl be awarded $4,440 in attorneys' fees for these hours.

The Court notes, however, that Xochimitl also seeks attorneys' fees for

several hours expended on tasks that do not relate exclusively to the Defaulting

Defendants.  Androphy Decl., Ex. 3.  In counsel's billing records from October 27,

2014 to December 26, 2014, Faillace seeks compensation for 9.85 hours spent on

tasks related to all Defendants: 2.50 hours meeting with Xochimitl, .75 hours

performing research, 3.20 hours drafting the complaint, and 3.40 hours finalizing

and filing the complaint.  *Id.* Several courts in this District have noted the

boilerplate nature of the papers used by Faillace's firm and have reduced or

excluded fees sought for hours purportedly spent drafting, finalizing, and filing the

complaint.  *See Yuquilema,* 2014 WL 4207106, at *14-15 (declining to award

Faillace fees for 1.8 hours spent "reviewing" the complaint and 3.2 hours of

"finalizing" and "filing" it); *Carrasco v. West Village Ritz Corporation*, 2012 WL

2814112, at *7 (S.D.N.Y. 2012) (declining to award Faillace fees for 2.30 hours spent

"finalizing" the complaint and 0.75 hours spent "filing" the complaint with the

Court); *Angamarca*, 2012 WL 3578781, at *13 (reducing attorney's fees by 15%

across-the-board for time spent by Michael Faillace & Associates drafting,

reviewing, and finalizing the complaint).  The Court notes the similar nature of the

papers in this case and therefore declines to award Faillace fees for the 3.40 hours

spent on finalizing and filing the complaint.  The Court also recommends that

Faillace be awarded only 20% of his fees for the remaining 6.45 hours that he

worked, amounting to $548.25, because these hours related to claims brought against all Defendants.

Xochimitl's counsel also seeks fees for 21 hours expended by Androphy that were entirely unrelated to the Defaulting Defendants. These hours are set out in counsel's billing records from January 16, 2015 to April 6, 2016 in which they list matters involving specific non-defaulting defendants, such as negotiating and drafting settlement agreements. Androphy Decl. Ex. 3. "As this was not time associated with litigating the claims against the [Defaulting Defendants] here, it should not properly be part of any attorneys' fees award." *Reiseck v. Universal Communications of Miami, Inc.*, No. 06-CV-777 (LGS) (JCF), 2014 WL 5374684, at *7 (S.D.N.Y. Sept. 5, 2014). Xochimitl thus should not be reimbursed for these fees.

The Court accordingly recommends that Xochimitl be awarded $4,440 for the 14.80 hours Androphy expended on tasks relating exclusively to the Defaulting Defendants, at a rate of $300 per hour, and $548.25 for 20% of the 6.45 hours that Faillace spent litigating claims against the Defendants as a whole. The total attorneys' fees entered against the Defaulting Defendants should thus be $4,988.25.[14]

---

[14] It is worth noting that the Court limited attorneys' fees to $15,000 in its approval of the settlement with the non-defaulting Defendants. It would be an anomalous result to approve fees in excess of that amount, as Plaintiff's counsel has sought here, given how little work was required against the Defaulting Defendants relative to the rest of the case.

### 2.   Costs

Finally, Xochimitl seeks to recover $700 in costs. Pl.'s Findings and Conclusions ¶ 61; Androphy Decl. Ex. 3. An employee who prevails in a wage-and-hour action is entitled to recover costs. 29 U.S.C. § 216(b); NYLL § 663(1). Costs are defined as "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *Leblanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). Xochimitl seeks reimbursement for the Court's $400 filing fee and expenses incurred on four $75 fees relating to effecting service. Androphy Decl. Ex. 3. The Court recommends that Xochimitl be reimbursed his costs for the filing fee as well as three of the service-related fees, for a total of $625 in costs.[15]

## III.   CONCLUSION

For the reasons set forth herein, I recommend that Xochimitl be awarded damages against the Defaulting Defendants in the amount of $67,676.27 in unpaid minimum wage and overtime compensation and spread of hours pay; $5,000 in statutory damages for NYLL wage statement and wage notice violations; $53,784.43 in liquidated damages; prejudgment and post-judgment interest as set out in parts II(F) and II(G); $4,988.25 in attorneys' fees; and $625 in costs.

---

[15] While Xochimitl requested that he be awarded costs for four service process fees, the Court notes that there are only three defaulting defendants. Because counsel has not indicated why four process servers were necessary, the Court declines to recommend awarding the fourth service fee.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

Procedure, the parties shall have fourteen (14) days from service of this Report to

file written objections. See also Fed. R. Civ. P.6. Such objections, and any responses

to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to

the chambers of the Honorable John G. Koeltl and the undersigned, United States

Courthouse, 500 Pearl Street, New York, New York 10007. Any requests for an

extension of time for filing objections must be directed to Judge Koeltl. FAILURE

TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A

WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. 28

U.S.C. § 636(b)(1); FED. R. CIV. P. 72. See Thomas v. Arn, 474 U.S. 140 (1985);

Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd &

Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated:      New York, New York
            September 8, 2016


JAMES L. COTT
United States Magistrate Judge

## Table 1: Unpaid Minimum Wages

| | Weeks | Salary | Hours Per Week | Hourly Rate | Min. Wage | Under-payment Per Hour | Number of Under-Paid Hours | Under-payment Per Week | Unpaid Min. Wages |
|---|---|---|---|---|---|---|---|---|---|
| 12/31/08 - 7/23/09 | 30 | Cook $475 per week | Cook 50 | Cook $9.50 ($475 / 50 hrs) | $7.15 | Cook N/A | Cook N/A | Cook N/A | Cook N/A |
| | | Delivery $5 per hour | Delivery 15 | Delivery $5 per hour | | Delivery N/A – overtime | Delivery N/A – overtime | Delivery N/A – overtime | Delivery N/A |
| 7/24/09 – 10/15/10 | 63 | Cook $475 per week | Cook 50 | Cook 9.50 ($475 / 50 hrs) | $7.25 | Cook N/A | Cook N/A | Cook N/A | Cook N/A |
| | | Delivery $5 per hour | Delivery 15 | Delivery $5 per hour | | Delivery N/A – overtime | Delivery N/A – overtime | Delivery N/A – overtime | Delivery N/A |
| 10/16/10 – 12/31/10 | 11 | Cook $512.50 per week | Cook 50 | Cook $10.25 ($512.50 / 50 hrs) | $7.25 | Cook N/A | Cook N/A | Cook N/A | Cook N/A |
| | | Delivery $5 per hour | Delivery 15 | Delivery $5 per hour | | Delivery N/A – overtime | Delivery N/A – overtime | Delivery N/A – overtime | Delivery N/A |
| 1/1/11 - 4/8/11 | 14 | Cook $512.50 per week | Cook 50 | Cook $12.81 ($512.50 / 40 hrs) | $7.25 | Cook N/A | Cook N/A | Cook N/A | Cook N/A |
| | | Delivery $5 per hour | Delivery 15 | Delivery $5 | | Delivery N/A – overtime | Delivery N/A – overtime | Delivery N/A – overtime | Delivery N/A |
| 4/9/11 - 5/14/11 | 5 | Cook $512.50 per week | Cook 50 | Cook $12.81 ($512.50 / 40 hrs) | $7.25 | Cook N/A | Cook N/A | Cook N/A | Cook N/A |
| | | Delivery $5 per hour | Delivery 15 | Delivery $5 | | Delivery N/A – overtime | Delivery N/A – overtime | Delivery N/A – overtime | Delivery N/A |

1

| 5/15/11 – 12/30/11 | 33 | Cook $537.50 per week | Cook 50 | Cook $13.44 ($537.50 / 40 hrs) | $7.25 | Cook N/A | Cook N/A | Cook N/A | Cook N/A |
| | | Delivery $5 per hour | Delivery 15 | Delivery $5 | | Delivery N/A – overtime | Delivery N/A – overtime | Delivery N/A – overtime | Delivery N/A |
| 12/31/11 – 11/15/12 | 46 | Cook $537.50 per week | Cook 50 | Cook $13.44 ($537.50 / 40 hrs) | $7.25 | Cook N/A | Cook N/A | Cook N/A | Cook N/A |
| | | Delivery $5 per hour | Delivery 15 | Delivery $5 | | Delivery N/A – overtime | Delivery N/A – overtime | Delivery N/A – overtime | Delivery N/A |
| 11/16/12 – 3/15/13 | 17 | Cook $537.50 per week | Cook 50 | Cook $13.44 ($537.50 / 40 hrs) | $7.25 | Cook N/A | Cook N/A | Cook N/A | Cook N/A |
| | | Delivery N/A | Delivery 0 | Delivery N/A | | Delivery N/A | Delivery N/A | Delivery N/A | Delivery N/A |
| 3/16/13 – 5/15/13 | 9 | Cook $397.75 per week | Cook 37 | Cook $9.94 ($397.75 / 40 hrs) | $7.25 | Cook N/A | Cook N/A | Cook N/A | Cook N/A |
| | | Delivery N/A | Delivery 0 | Delivery N/A | | Delivery N/A | Delivery N/A | Delivery N/A | Delivery N/A |
| 5/16/13 – 12/31/13 | 33 | Cook $397.75 per week | Cook 37 | Cook $9.94 ($397.75 / 40 hrs) | $7.25 | Cook N/A | Cook N/A | Cook N/A | Cook N/A |
| | | Delivery $5 per hour | Delivery 26 | Delivery $5 | | Delivery $2.25 | Delivery 3 | Delivery $6.75 | Delivery $222.75 |
| 1/1/14 – 1/15/14 | 2 | Cook $397.75 per week | Cook 37 | Cook $9.94 ($397.75 / 40 hrs) | $8 | Cook N/A | Cook N/A | Cook N/A | Cook N/A |
| | | Delivery $5 per hour | Delivery 26 | Delivery $5 | | Delivery $3 | Delivery 3 | Delivery $9 | Delivery $18 |
| 1/16/14 – 3/31/14 | 11 | Cook N/A | Cook 0 | Cook N/A | $8 | Cook N/A | Cook N/A | Cook N/A | Cook N/A |
| | | Delivery $5 per hour | Delivery 26 | Delivery $5 | | Delivery $3 | Delivery 26 | Delivery $78 | Delivery $858 |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **4/1/14 – 4/21/14** | 3 | <u>Cook</u> $700 per week | <u>Cook</u> 60 | <u>Cook</u> $17.50 ($700 / 40 hrs) | $8 | <u>Cook</u> N/A | <u>Cook</u> N/A | <u>Cook</u> N/A | <u>Cook</u> N/A |
| | | <u>Delivery</u> N/A | <u>Delivery</u> 0 | <u>Delivery</u> N/A | | <u>Delivery</u> N/A | <u>Delivery</u> N/A | <u>Delivery</u> N/A | <u>Delivery</u> N/A |
| **5/1/14 – 9/6/14** | 18 | <u>Cook</u> $700 per week | <u>Cook</u> 60 | <u>Cook</u> $17.50 ($700 / 40 hrs) | | <u>Cook</u> N/A | <u>Cook</u> N/A | <u>Cook</u> N/A | <u>Cook</u> N/A |
| | | <u>Delivery</u> N/A | <u>Delivery</u> 0 | <u>Delivery</u> N/A | | <u>Delivery</u> N/A | <u>Delivery</u> N/A | <u>Delivery</u> N/A | <u>Delivery</u> N/A |

**Total unpaid minimum wages: $1,098.75**

3

**Table 2: Unpaid Overtime Wages**

| | Weeks | Salary | Hours Per Week | Hourly OT Rate | Under-payment Per Hour | Weekly OT Hours | Weekly Unpaid OT | Unpaid OT |
|---|---|---|---|---|---|---|---|---|
| **12/31/08 - 7/23/09** | 29 | Cook $475 per week | Cook 50 | Cook $14.25 ($9.50 x 1.5) | Cook $4.75 | Cook 10 | Cook $47.50 | Cook $1,377.50 |
| | | Delivery $5 per hour | Delivery 15 | Delivery $10.73 ($7.15 x 1.5) | Delivery $5.73 | Delivery 15 | Delivery $85.95 | Delivery $2,492.55 |
| **7/24/09 – 10/15/10** | 64 | Cook $475 per week | Cook 50 | Cook $14.25 ($9.50 x 1.5) | Cook $4.75 | Cook 10 | Cook $47.50 | Cook $3,040 |
| | | Delivery $5 per hour | Delivery 15 | Delivery $10.88 ($7.25 x 1.5) | Delivery $5.88 | Delivery 15 | Delivery $88.20 | Delivery $5,644.80 |
| **10/16/10 – 12/31/10** | 11 | Cook $512.50 per week | Cook 50 | Cook $15.38 ($10.25 x 1.5) | Cook $5.13 | Cook 10 | Cook $51.30 | Cook $564.30 |
| | | Delivery $5 per hour | Delivery 15 | Delivery $10.88 ($7.25 x 1/5) | Delivery $5.88 | Delivery 15 | Delivery $88.20 | Delivery $970.20 |
| **1/1/11 - 4/8/11** | 14 | Cook $512.50 per week | Cook 50 | Cook $19.22 ($12.81 x 1.5) | Cook $19.22 | Cook 10 | Cook $192.20 | Cook $2,690.80 |
| | | Delivery $5 per hour | Delivery 15 | Delivery $10.88 ($7.25 x 1.5) | Delivery $5.88 | Delivery 15 | Delivery $88.20 | Delivery $1,234.80 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4/9/11 - 5/14/11 | 5 | Cook $512.50 per week | Cook 50 | Cook $19.22 ($12.81 x 1.5) | Cook $19.22 | Cook 10 | Cook $192.20 | Cook $961 |
| | | Delivery $5 per hour | Delivery 15 | Delivery $10.88 ($7.25 x 1.5) | Delivery $5.88 | Delivery 15 | Delivery $88.20 | Delivery $441 |
| 5/15/11 – 12/30/11 | 33 | Cook $537.50 per week | Cook 50 | Cook $20.16 ($13.44 x 1.5) | Cook $20.16 | Cook 10 | Cook $201.60 | Cook $6,652.80 |
| | | Delivery $5 per hour | Delivery 15 | Delivery $10.88 ($7.25 x 1.5) | Delivery $5.88 | Delivery 15 | Delivery $88.20 | Delivery $2,910.60 |
| 12/31/11 - 11/15/12 | 46 | Cook $537.50 per week | Cook 50 | Cook $20.16 ($13.44 x 1.5) | Cook $20.16 | Cook 10 | Cook $201.60 | Cook $9,273.60 |
| | | Delivery $5 per hour | Delivery 15 | Delivery $10.88 ($7.25 x 1.5) | Delivery $5.88 | Delivery 15 | Delivery $88.20 | Delivery $4,057.20 |
| 11/16/12 – 3/15/13 | 17 | Cook $537.50 per week | Cook 50 | Cook $20.16 ($13.44 x 1.5) | Cook $20.16 | Cook 10 | Cook $201.60 | Cook $3,427.20 |
| | | Delivery $0 | Delivery 0 | Delivery N/A | Delivery N/A | Delivery 0 | Delivery N/A | Delivery N/A |
| 3/16/13 - 5/15/13 | 9 | Cook $397.75 per week | Cook 37 | Cook N/A | Cook N/A | Cook 0 | Cook N/A | Cook N/A |
| | | Delivery $0 | Delivery 0 | Delivery N/A | Delivery N/A | Delivery 0 | Delivery N/A | Delivery N/A |
| 5/16/13 – 12/31/13 | 33 | Cook $397.75 per week | Cook 37 | Cook N/A | Cook N/A | Cook 0 | Cook N/A | Cook N/A |
| | | Delivery $5 per hour | Delivery 26 | Delivery $10.88 ($7.25 x 1.5) | Delivery $5.88 | Delivery 23 | Delivery $135.24 | Delivery $4,462.92 |

5

| 1/1/14 – 1/15/14 | 2 | Cook $397.75 per week | Cook 37 | Cook N/A | Cook N/A | Cook 0 | Cook N/A | Cook N/A |
|---|---|---|---|---|---|---|---|---|
| | | Delivery $5 per hour | Delivery 26 | Delivery $12 ($8 x 1.5) | Delivery $7 | Delivery 23 | Delivery $161 | Delivery $322 |
| 1/16/14 – 3/31/14 | 11 | Cook N/A | Cook 0 | Cook N/A | Cook N/A | Cook N/A | Cook N/A | Cook N/A |
| | | Delivery $5 per hour | Delivery 26 | Delivery N/A | Delivery N/A | Delivery N/A | Delivery N/A | Delivery N/A |
| 4/1/14 – 4/21/14 | 3 | Cook $700 per week | Cook 60 | Cook $26.25 ($17.50 x 1.5) | Cook $26.25 | Cook 20 | Cook $525 | Cook $1,575 |
| | | Delivery N/A | Delivery 0 | Delivery N/A | Delivery N/A | Delivery N/A | Delivery N/A | Delivery N/A |
| 5/1/14 – 9/6/14 | 18 | Cook $700 per week | Cook 60 | Cook $26.25 ($17.50 x 1.5) | Cook $26.25 | Cook 20 | Cook $525 | Cook $9,450 |
| | | Delivery N/A | Delivery 0 | Delivery N/A | Delivery N/A | Delivery N/A | Delivery N/A | Delivery N/A |

**Total unpaid overtime wages: $61,548.27**

## Table 3: Unpaid Spread of Hours Pay

| | Weeks | Minimum Wage | Number of Days Per Week with 10+ Hour Shifts | Owed Spread of Hour Pay Per Week | Total Unpaid Spread of Hour Pay |
|---|---|---|---|---|---|
| 12/31/08 - 7/23/09 | 29 | $7.15 | 5 | N/A | N/A |
| 7/24/09 – 10/15/10 | 64 | $7.25 | 5 | N/A | N/A |
| 10/16/10 – 12/31/10 | 11 | $7.25 | 5 | N/A | N/A |
| 1/1/11 - 4/8/11 | 14 | $7.25 | 5 | $36.25 | $507.50 |
| 4/9/11 - 5/14/11 | 5 | $7.25 | 5 | $36.25 | $181.25 |
| 5/15/11 – 12/30/11 | 33 | $7.25 | 5 | $36.25 | $1196.25 |
| 12/31/11 - 11/15/12 | 46 | $7.25 | 5 | $36.25 | $1,667.50 |
| 11/16/12 – 3/15/13 | 17 | $7.25 | 2 | $14.50 | $246.50 |
| 3/16/13 - 5/15/13 | 9 | $7.25 | 1 | $7.25 | $65.25 |
| 5/16/13 – 12/31/13 | 33 | $7.25 | 4 | $29 | $957 |
| 1/1/14 – 1/15/14 | 2 | $8 | 4 | $32 | $64 |
| 1/16/14 – 3/31/14 | 11 | $8 | 0 | N/A | N/A |
| 4/1/14 – 4/21/14 | 3 | $8 | 0 | N/A | N/A |
| 5/1/14 – 9/6/14 | 18 | $8 | 1 | $8 | $144 |

**Total Unpaid Spread of Hours Pay: $5,029.25**

7